UNITED STATES, Appellee,

v.

Larnell E. PEEL, Senior Airman, U.S. Air Force, Appellant.

No. 60,084.
ACM 26000.

U.S. Court of Military Appeals.

Sept. 29, 1989.
Certiorari Denied Jan. 8, 1990.
See 110 S.Ct. 731.

236

For Appellant: *Captain Laurence M. Soybel* (argued); *Colonel Richard F. O'Hair* (on brief); *Colonel Leo L. Sergi.*

For Appellee: *Major Terry M. Petrie* (argued); *Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Major Kathryn I. Taylor,* (on brief); *Lieutenant Colonel Morris A. Tanner, Jr.*

*Opinion of the Court*

EVERETT, Chief Judge:

A general court-martial composed of officer members tried appellant at Royal Air Force (RAF) Mildenhall, England, for the rapes of Carol Bishop and Judith Curtis, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920, and for three assaults on Tracey Cooper and two assaults on Julie Jones, in violation of Article 128, UCMJ, 10 USC § 928. Peel pleaded not guilty to all charges and was acquitted of one assault on Ms. Cooper and another on Ms. Jones. However, he was convicted of all the other offenses and was sentenced to a dishonorable discharge, confinement for 8 years, total forfeitures, and reduction to the grade of airman basic.

Thereafter, in accordance with his staff judge advocate's recommendation, the convening authority approved the sentence except for reducing the confinement to 7 years and 3 months. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated March 24, 1988, after rejecting several contentions advanced by appellant. At this level, we granted review to consider three issues raised by appellate defense counsel and four (IV–VII) specified by the Court:

I

WHETHER THE MILITARY JUDGE ERRED BY PERMITTING INTO EVIDENCE, OVER DEFENSE OBJECTION, APPELLANT'S STATEMENT TWO DAYS AFTER AN ALLEGED RAPE THAT HE WAS "GETTING KICKED OUT OF THE SERVICE" AS EVIDENCE TENDING TO PROVE THAT THE RAPE OCCURRED.

II

WHETHER APPELLANT WAS SUBSTANTIALLY PREJUDICED BY THE MILITARY JUDGE'S CONTINUAL RULINGS PERMITTING THE GOVERNMENT TO INTRODUCE EVIDENCE OF APPELLANT'S FORCE-

FUL AND DOMINEERING PERSON-ALITY TO PROVE THE ALLEGED AS-SAULTS AND RAPES.

## III

WHETHER THE MILITARY JUDGE ERRED WHEN HE ALLOWED LT. COL TUTTLE, A CLINICAL SOCIAL WORKER, TO TESTIFY AS AN EX-PERT CONCERNING A RAPE VIC-TIM'S BEHAVIOR SUBSEQUENT TO AN ALLEGED RAPE.

## IV

WHETHER UNITED STATES V. GROS-TEFON, 12 MJ 431 (CMA 1982), AU-THORIZES A SUBMISSION TO A MILI-TARY APPELLATE COURT BY ANY PERSON OTHER THAN APPELLANT IN PROPER PERSON.

## V

IF SO, UNDER WHAT CONDITIONS MUST A COURT OF MILITARY RE-VIEW ACCEPT SUCH A SUBMIS-SION?

## VI

WHETHER, UNDER THE PARTICU-LAR CIRCUMSTANCES OF THIS CASE, WHERE INEFFECTIVE AS-SISTANCE OF COUNSEL IS AL-LEGED, A GENERAL POWER OF AT-TORNEY GIVEN TO A NON–LAWYER MAY AUTHORIZE WAIVER OF THE ATTORNEY–CLIENT PRIVILEGE.

## VII

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY FAILING TO INSTRUCT ON REA-SONABLE MISTAKE.

## I

*Whether The Witness' Statement That Appellant Said He Was "Getting Kicked Out" Of The Service Was Admissible.*

■ Ms. Cooper testified about being as-saulted by Peel on October 24 and 31, 1986,

and on November 15, 1986. In reciting the circumstances that led up to the third as-sault, she explained that she had seen Peel at the Liberty Club and that he was in an angry mood at the time because she was there with some of her male friends. She then explained:

> We went out into the lobby and we sat down, and he was just going on about something, and he said that he was—he had this white sweatshirt on with "Phila-delphia" written on it—you know, that he was getting kicked out and that he was getting sent back to the States, getting kicked out of service. I don't know what really—

At this point, defense counsel objected and requested an Article 39(a), UCMJ, 10 USC § 839(a), session. Trial counsel responded that there was no need for such a session because "[w]e'll move on very quickly from this. I just want to set the stage for what happened in the assault." However, de-fense counsel persisted in the request; and so the military judge conducted an Article 39(a) session.

The defense contended that the testimo-ny about Peel's statement "that he was getting kicked out of the service" constitut-ed inadmissible "bad person" evidence be-cause its

> only purpose ... [was] to cause the court members to believe that there was anoth-er basis or some basis, or for some rea-son [to] have something [planted] in their mind to say that he's a bad person if he is in fact going to be kicked out of the United States Air Force either under Air Force Regulation 39–10 or for whatever reason.

Trial counsel then responded that the evi-dence was relevant because it showed ap-pellant had realized that he was in trouble for raping Airman Curtis 2 days before. Thus, the remark by Peel showed his con-sciousness of guilt for committing the rape and tended to prove that he had, in fact, raped Airman Curtis.

Trial counsel conceded that at the time of the alleged statement to Ms. Cooper, Air-

man Curtis had not yet reported the rape offense. However, trial counsel asserted that Peel had seen Airman Curtis earlier that evening before making the statement to Ms. Cooper, and it had been apparent to Peel that Airman Curtis was upset with him.

Trial counsel then promised the judge that it "will all be tied together" after Airman Curtis testified. The military judge ruled that, "[a]t this time, I will allow it, but I will be listening very closely for the tie-in. If I don't see the tie-in, I'll have to instruct the jury at a later time to disregard all references to that." However, after Airman Curtis had testified later in the trial, there was no discussion of the statement that appellant had made to Ms. Cooper. The military judge never gave the promised instruction, and defense counsel did not object to his failure to do so.

Appellant contends that his statement to Ms. Cooper was not admissible to show consciousness of guilt, since it was never directly or indirectly related to the alleged rape of Airman Curtis. We agree. The record does not show that, when he made the comment to Ms. Cooper, he believed he was suspected of the rape. Indeed, 2 days had passed since he had been at Airman Curtis' home where the alleged rape occurred; and so far as he knew, she had not yet reported the incident. *See Wharton's Criminal Evidence* (hereafter Wharton) §§ 85–86 (C. Torcia 14th ed. 1985). Furthermore, the remark was so ambiguous that it could hardly be construed to show his consciousness of guilt with respect to the rape. *Cf. Wharton, supra* § 149. *See generally* Mil.R.Evid. 401, Manual for Courts–Martial, United States, 1984 (defines "relevant evidence"), and 402.

■ Even though the testimony was inadmissible, we believe that its impact, if any, was minor. In the first place, the reference to this remark was incidental to Ms. Cooper's testimony about the assault on her, and it occurred early in the trial. By the time Airman Curtis testified about the rape, even the lawyers and the judge apparently had forgotten about this testimony. Moreover, the very ambiguity of the statement makes it unlikely that the court members connected it in any way to the rape of Airman Curtis; and there was no reference to it by trial counsel in the final argument.

Furthermore, this testimony by Ms. Cooper would have little effect in inducing the court members to find Peel guilty of assaulting her; and obviously appellant's remark did not convince the members that he should be convicted of all the charges against him just because he was "a bad person," for the members acquitted him of two of the assaults with which he was charged.

## II

*Whether The Military Judge Erred By Admitting "Evidence of Appellant's Forceful And Domineering Personality."*

During an Article 39(a) session before trial commenced, defense counsel made a motion *in limine* to prohibit trial counsel from introducing any evidence that appellant was "a bad person with the propensity to commit violent acts against women." According to the defense, such evidence would violate Mil.R.Evid. 404(a) whereunder "[e]vidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion." The defense concern was that—in violation of Mil.R.Evid. 404(a)—trial counsel would offer evidence that Peel had a bad temper and a propensity to be violent toward women in order to prove that he had probably acted in conformity therewith at the times of the various acts of violence with which he was charged. In addition, the defense contended that this evidence was inadmissible under Mil.R.Evid. 403, since any other "probative value" this evidence might have was "substantially outweighed by the danger of unfair prejudice."

Trial counsel responded that the intended testimony of appellant's various female victims was admissible in the Government's

case-in-chief as part of the *res gestae*.[*] Furthermore, he contended that, even if the evidence objected to by defense counsel did constitute uncharged misconduct, the facts and circumstances recounted by the victims in describing their mistreatment by Peel would be admissible under Mil.R.Evid. 404(b) to show appellant's "motive, ... intent, ... knowledge, ... or absence of [any] mistake" by him concerning his victim's consent. At this point, the military judge ordered trial counsel to request an Article 39(a) session before offering any character evidence or any evidence of "[o]ther crimes, wrongs, or acts."

Throughout the trial, defense counsel made numerous motions for a mistrial based on the same arguments initially advanced regarding admissibility of evidence pertaining to appellant's domineering behavior toward the victims. However, the military judge denied all these motions on the basis that the witnesses who were testifying were the same ones named in the specifications and that their testimony would establish appellant's motive for treating them as roughly as he did (*i.e.*, the assaults on them), as well as to explain Peel's "ground rules" for their relationship with him—a relationship which could be described as one of his attempted total dominance over them.

The Court of Military Review agreed with the Government that the testimony in question "described the facts and circumstances of the assaults, constituted the *res gestae* of the charged offenses, and was therefore properly admitted as part of the Government's case-in-chief. It demonstrated appellant's attempt to physically and psychologically dominate his victims and their unsuccessful efforts to resist." Unpub. op. at 3.

■ Before this Court, appellate defense counsel reiterate the contention that throughout the trial the prosecutor interjected evidence of uncharged misconduct and of Peel's forceful, domineering personality in order to prove that appellant acted in conformity with that character by raping two women and assaulting two others. The first alleged instance of the use of such evidence in violation of Mil.R.Evid. 404 and 403 occurred when trial counsel offered evidence that Peel had assaulted Ms. Cooper on October 31, 1986 (specification 2 of Charge II), by grabbing her hair and throat and pushing her to the floor. Over strenuous defense objection, the military judge allowed Ms. Cooper to testify that, after pushing her to the floor, Peel had made her sit there for about 40 minutes while he threw British coins at her face.

This testimony was probably admissible as "part of the same transaction as the" assault. *United States v. Doss*, 15 MJ 409, 412 n. 5 (CMA 1983); *see United States v. Owens*, 21 MJ 117, 123 (CMA 1985); *United States v. Thomas*, 11 MJ 388 (CMA 1981). However, as the Government points out, any error in disclosing this "uncharged misconduct" was clearly harmless. The court members acquitted Peel of assaulting Ms. Cooper on October 31; and if they acquitted him as to this alleged offense, it is hard to see how evidence of the coin-tossing incident would have affected any of the other findings.

Secondly, appellant complains that Ms. Jones, whom Peel had allegedly assaulted on two occasions, was allowed to testify that, after the second assault, she had stopped dating appellant "[b]ecause he was violent." This answer was given in response to trial counsel's question, "Why did you stop seeing Airman Peel?" This question assumed a fact as to which there had been no evidence—namely, that Ms. Jones had stopped seeing Peel. Moreover, whether she stopped seeing Peel was immaterial, unless it was to rebut some defense implication that she had not stopped

---

[*] "*Res gestae* ... The whole of the transaction under investigation and every part of it.... In its operation it renders acts and declarations which constitute a part of the things done and said admissible in evidence, even though they would otherwise come within the rule excluding hearsay evidence or self-serving declarations...." *Blacks' Law Dictionary* 1173 (5th ed. 1979).

seeing Peel and that her continued relationship with him was inconsistent with the claimed assault.

The military judge recognized that the evidence was inadmissible and immediately instructed the members to disregard it. Moreover, during final instructions to the court members, the military judge repeated the same advice and also obtained from each member an affirmative assurance that he would disregard this testimony by Ms. Jones.

■ Finally, the defense complains that trial counsel, in his final argument, talked about Peel's domineering relationship with the victims. Furthermore, the prosecutor urged the members to pay attention to the similarities in appellant's relationship to the various women and suggested that the testimony of all the victims had a "ring of truth" because of these similarities.

The Government responds that, at the beginning of his argument, trial counsel told the court members that they were to consider each crime separately. Also, the Government submits that the remarks of trial counsel were not inflammatory and could not have destroyed the impartiality of the court members, who acquitted Peel of two of the alleged assaults. We agree that, even assuming *arguendo* that trial counsel acted improperly in some way, this did not prejudice appellant.

The military judge gave the court members limiting instructions about the use to which the "similarities" of the alleged offenses could be put; and he carefully advised them only to consider such matters "in your determination of the credibility of the witnesses testifying before you" but not to consider similarities as a basis for inferring that the accused was guilty of one offense because they concluded that he was guilty of another. The judge's instruction—which adopted language suggested by the defense—correctly stated the law with sufficient clarity to be understood by the members and to eliminate any possibility of prejudice.

## III

*Whether Lieutenant Colonel Tuttle Qualified As An Expert Witness.*

■ Airman Curtis waited several days before she reported to military authorities that appellant had raped her. Furthermore, during her cross-examination, defense counsel brought out that, after the rape, she was still talking to appellant and that, on a later occasion, she had even gone back to his house to see him. Moreover, after the rape but before she reported it, Curtis had asked Peel to watch her go back into her house when she came home one night. This request was made, she explained, because she "was trying to make my life normal again."

The point defense counsel obviously sought to make in cross-examination was that after a rape the victim would not have interacted with the rapist in this way. To counter this inference, the Government called Lieutenant Colonel Gerard R. Tuttle to testify in its case-in-chief as an expert witness on rape counseling and to describe his observations of Airman Curtis' symptoms and behavior after she had reported the rape.

Tuttle was the Chief of Ancillary Services at the Regional Hospital, RAF Lakenheath. As part of his duties, he was Chief Social Worker in the Mental Health Clinic. Tuttle had a Masters Degree from Columbia University and a Ph.D. from Florida State University, both in Social Work. His dissertation had been on "crisis intervention"; and one of his published papers had been on crisis intervention in the military setting. Although Tuttle had no formal training in rape-victim counseling, over the previous 18 months he had counseled approximately 40 persons who had been raped at some time in their lives. About 34 of them had been incest victims, while 6 or 7 had been adults when they were raped. According to Tuttle, he kept current in his field by regularly attending lectures and reading scholarly literature, some of which concerned rape.

The defense objected to Tuttle's qualifications as an expert—in large part because most of his experience had been in counseling child victims of incest, rather than adult rape victims. However, the military judge accepted him "as an expert witness on the subject of crisis intervention and rape counseling."

Appellant still contends that Lieutenant Colonel Tuttle was not qualified to testify as an expert under Mil.R.Evid. 702. The defense position is that, although Tuttle may have been extremely well qualified to discuss adult-behavior patterns of people who had been incest victims as a child, he had practically no experience with victims who had been raped as adults, and he had received no training in this field for at least 5 years. Therefore, Tuttle "simply was not qualified to explain why Airman Curtis 'normalized' her relationship with appellant after this incident."

After being accepted as an expert, Lieutenant Colonel Tuttle testified that, in his professional opinion, it was not inconsistent behavior for a rape victim not to immediately report the offense. *Cf. United States v. Nelson*, 25 MJ 110 (CMA 1987). The expert was permitted to testify on the alleged victim's behavior in striving for "a return to normalcy" and in acting as if the rape had never happened.

■, Mil.R.Evid. 702 defines an expert as one whose testimony can "assist the trier of fact to understand the evidence or determine a fact in issue." *United States v. Mustafa*, 22 MJ 165 (CMA), *cert. denied*, 479 U.S. 953, 107 S.Ct. 444, 93 L.Ed.2d 392 (1986). Under this definition admissibility of expert testimony has been broadened. Indeed, anyone who has substantive knowledge in a particular field which exceeds that of the average court member arguably is an expert within that field; and the type of qualification within that field that the witness possesses goes to the weight to be given the testimony and not to its admissibility.

The court members had to determine whether the behavior of the victim, Airman Curtis, was consistent with that of an individual who had been recently raped. Certainly Tuttle's testimony could assist the members in reaching this determination. As the Court of Military Review observed, the record of trial clearly establishes that this witness had specialized training and experience in counseling rape victims as well as in crisis intervention; and this would appear to give him the status required of an expert under Mil.R.Evid. 702. *See United States v. Reynolds*, 29 MJ 105 (CMA 1989); *United States v. Carter*, 26 MJ 428, 429 (CMA 1988). Furthermore, he was not asked to testify as to his opinion about a hypothetical victim but instead testified about Airman Curtis, whom he had observed. The military judge properly ruled that he was an expert and admitted his testimony. *United States v. Mustafa, supra; United States v. Hammond*, 17 MJ 218 (CMA 1984).

IV

*Whether The Military Judge Was Required To Instruct On Reasonable Mistake of Fact.*

■ Ms. Bishop testified that appellant invited her to come over to his house for a couple of hours during the middle of the day. They had some wine and kissed. However, when appellant made further advances, she told him to stop; said she thought she should leave; and picked up her purse. At that point, appellant grabbed her purse and blocked her way to the door; pushed her against the settee; asserted pressure against her face saying, "I can break your face;" and raped her. After raping her, Peel told Ms. Bishop, "It's your fault. You shouldn't have pushed me away," and asked, "Is this just going to be between me and you?"

Airman Curtis testified that she lived two doors down from appellant's apartment. Peel came over to her house and eventually they kissed. Appellant then started pulling her hair. Later appellant started kissing her on her breasts. She testified that she kept telling him to stop. "He pushed me to the floor, and I was

struggling. I almost got away, but he grabbed my arms and he put my left arm underneath me again. And he got on his side over me. He unzipped my pants and pulled them down with his right arm. And his left arm was holding my right arm down." Furthermore, Curtis testified that appellant put pressure on her left arm and that she was struggling to get him off. She resisted to the best of her ability, but appellant raped her anyway. Afterwards, appellant gave her his first sergeant's telephone number and told her to call him if she wanted to.

Appellant did not testify to dispute this testimony. However, defense counsel cross-examined both of these witnesses. This cross-examination and the closing arguments of both trial and defense counsel suggested two theories: Either the rapes did not happen or any sexual contact was consensual. Nowhere in the record did defense counsel at any time assert or rely on a theory that Peel honestly and reasonably, but mistakenly, believed the two women wanted to engage in sex with him. Furthermore, defense counsel did not request any instructions on reasonable mistake of fact.

■ When evidence in a rape case reasonably raises the affirmative defense of mistake of fact, the military judge must instruct thereon. *United States v. Gamble*, 27 MJ 298 (CMA 1988); *United States v. Carr*, 18 MJ 297 (CMA 1984). However, from our reading of the record and in view of the absence of any defense contention at trial that there was a reasonable mistake of fact and the absence of any request for instructions thereon, we are convinced that this defense was not raised at trial. *Cf. United States v. Baran*, 22 MJ 265, 267 (CMA 1986). Indeed, the only real issue as to the two charged rapes was consent. This issue was vigorously litigated throughout the trial and was the subject of proper instructions. Thus, we perceive no error in the military judge's not instructing the members on reasonable mistake of fact. *Cf. United States v. Taylor*, 26 MJ 127 (CMA 1988).

## V

*Whether A Violation Of United States v. Grostefon, 12 MJ 431 (CMA 1982) Occurred In This Case.* (Issues IV–VI)

■ Appellate defense counsel submitted a motion to the Court of Military Review to submit a 55–page document entitled, "Correlations, Questions, and Comments," which was prepared by appellant's mother. In his motion, appellate defense counsel stated that the document was being submitted to the Court of Military Review "pursuant to *United States v. Grostefon*, 12 MJ 431 (CMA 1982)." Furthermore, he noted that the document raised the following issues:

1. The evidence was insufficient to support a finding of guilty as to all charges and specifications.

2. Appellant was denied effective assistance of counsel.

3. Specification 2 of Charge II did not properly state an offense.

4. Lt. Colonel Tuttle was not qualified to testify as an expert witness.

5. The trial transcript was not verbatim.

Appellate defense counsel also submitted an assignment of errors to the Court of Military Review. One of the six issues he raised was whether Lieutenant Colonel Tuttle was qualified to testify as an expert witness. In addition, appellate defense counsel submitted another motion to the Court of Military Review to file a power of attorney which had been executed by Peel to authorize his mother to act as his agent and attorney-in-fact.

The Government vigorously opposed appellate defense counsel's motions to file these documents. It argued that *Grostefon* requires the filing of materials directly by an accused; that appellant had no right to designate a non-lawyer for appellate purposes; that the general power of attorney did not authorize his mother to act as his attorney in a criminal matter; that, even if the power of attorney did purport to do this, it would not comply with the requirement that those representing an accused in

criminal matters be lawyers; and that it was doubtful whether allegations by Peel's mother that he had received ineffective assistance of counsel could waive his attorney-client privilege.

The Court of Military Review on October 26, 1987, denied the motion to file documents with the court. Thereupon, appellate defense counsel filed a "Motion to Suggest Reconsideration" of that court's denial of appellant's motion to file the documents. In this motion for reconsideration, appellate defense counsel stated that the 55-page document written by appellant's mother was written and submitted at the express direction of Peel because of his inability to prepare such a document while in confinement. Furthermore, appellate defense counsel stated "that the document is for all legal purposes properly submitted under *United States v. Grostefon,* 12 MJ 431 (CMA 1982), since it was submitted for appellant by his attorney in fact." The Government also opposed this motion, which was denied by the Court of Military Review on November 4, 1987.

Recently, in *United States v. Healy,* 26 MJ 394, 397 (CMA 1988), we explained *Grostefon,* as follows:

[T]he purpose of our holding in *Grostefon* was to assure that an accused had the opportunity to bring to the attention of the appellate court any issue he wished to have considered with respect to the findings and sentence, as finally approved by the convening authority. Thus, we require appellate defense counsel to invite the attention of the Court of Military Review or of this Court to issues specified by an accused. Thereby, we have sought to guarantee that no accused would be left with the belief that his lawyer had not raised an issue which he wished to have considered. Imposition of this requirement was viewed as especially important in military justice, because the defense counsel at both the trial and appellate levels usually are military officers, and an accused whose issues have not been raised on appeal

might conclude that the omission was the result of command influence.

In applying *Grostefon,* we have allowed appellate defense counsel simply to identify issues which the accused wished to have raised, rather than requiring counsel to brief those issues fully. In turn, if the issue has been identified as possibly meritorious, the Court may require briefs thereon. *United States v. Knight,* ... [15 MJ 202 (CMA 1983) ].

In moving to file appellant's mother's 55-page document, appellate defense counsel was attempting to do what *Grostefon* directs. As appellate defense counsel explained during oral argument in this Court, Peel had "adopted" this document as his own and wanted to bring the issues raised there to the attention of the Court of Military Review. Moreover, appellate government counsel conceded during oral argument that there is no harm in a third person's preparing, in behalf of an accused and at his request, a document which then is signed and transmitted to his appellate defense counsel for submission to the appellate court pursuant to *Grostefon.*

Technically, the Court of Military Review may have been correct in rejecting this document, which did not bear the accused's signature and was primarily an outline of the evidence at trial. However, if we consider substance rather than form, Peel was entitled to have the Court of Military Review consider the document which his mother had prepared: For practical purposes, it was *Peel*'s document.

In any event, we are convinced that the refusal by the Court of Military Review to receive it had no effect on its disposition of Peel's appeal. Likewise, our perusal of this document does not indicate the presence of any error in the record which materially prejudiced appellant's rights. Art. 59(a), UCMJ, 10 USC § 859(a).

## VI

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.