**UNITED STATES, Appellee**

v.

**Phillip A. WILLIAMS, Sergeant
U.S. Air Force, Appellant.**

No. 93–0029.
CMR No. 28579.

U.S. Court of Military Appeals.

Argued Dec. 1, 1993.

Decided Sept. 30, 1994.

For Appellant: *Captain Robert E. Watson* (argued); *Colonel Jay L. Cohen and Captain David D. Jividen* (on brief); *Colonel Terry J. Woodhouse.*

For Appellee: *Captain Jane M.E. Peterson* (argued); *Colonel Jeffery T. Infelise* (on

brief); *Colonel Richard L. Purdon and Captain Thomas E. Wand.*

## Opinion of the Court

LAMBERTH, District Judge: [1]

During January and February 1990, appellant was tried by a military judge sitting alone as a general court-martial at Bergstrom Air Force Base, Texas. Contrary to his pleas, he was found guilty of rape (2 specifications), robbery (2 specifications), sodomy, and aggravated assault, in violation of Articles 120, 122, 125, and 128, Uniform Code of Military Justice, 10 USC §§ 920, 922, 925, and 928, respectively. He was sentenced to a dishonorable discharge, confinement for 20 years, total forfeitures, and reduction to airman basic. On May 3, 1990, the convening authority approved the sentence. On July 31, 1991, the Court of Military Review denied appellant's petition for a new trial, and on May 27, 1992, that court affirmed the findings and sentence. The court then granted appellee's motion for reconsideration and withdrew its prior decision. 34 MJ 1127 (1992). On reconsideration, the Court of Military Review again affirmed the findings and sentence. 35 MJ 812 (1992).

On June 22, 1993, this Court granted appellant's petition for grant of review on the following issues:

### I

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED WHEN FINDING NO PREJUDICE IN THE MILITARY JUDGE'S ADMISSION OF INADMISSIBLE EXPERT OPINION IN SENTENCING ON THE FU-

TURE DANGEROUSNESS OF APPELLANT.

### II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED BY NOT SETTING ASIDE THE FINDINGS AND SENTENCE OR REMANDING THE CASE BACK FOR A NEW CONVENING AUTHORITY ACTION DUE TO APPELLANT'S CONVENING AUTHORITY'S SEXUAL MISCONDUCT; MISCONDUCT WHICH LED THE AIR FORCE COURT OF MILITARY REVIEW TO REMAND OTHER CASES IN THE SAME TIME FRAME BACK FOR NEW CONVENING AUTHORITY ACTION.

We agree with the lower court's no-prejudice analysis, but we also hold that it erred in concluding in the first instance that the expert testimony on appellant's future dangerousness was inadmissible.[2] *See United States v. Stinson,* 34 MJ 233 (CMA 1992); *United States v. Gunter,* 29 MJ 140 (CMA 1989). Furthermore, we hold that the Air Force Court did not err by denying appellant's request to set aside the findings and sentence or remand for a new convening authority action on the basis of the convening authority's purported sexual misconduct. Art. 66(c), UCMJ, 10 USC § 866(c); *cf. United States v. Kroop,* 34 MJ 628, 630–31 (AFCMR 1992).

The evidence of record shows that, from the spring of 1988 through the summer of 1989, appellant had perpetrated violent acts against four women (S.K., M.A., J.W., and D.W.) in the area of South Austin, Texas. In early 1988, S.K. agreed to sexual intercourse with appellant in exchange for $45.00. In a

---

1. Judge Royce C. Lamberth of the United States District Court for the District of Columbia, sitting by designation pursuant to Article 142(f), Uniform Code of Military Justice, 10 USC § 942(f).

2. Although the Judge Advocate General has not certified for this Court's review the holding of the Court of Military Review that Colonel Grant's expert opinion testimony of appellant's future dangerousness was inadmissible, *see* Art. 67(a)(2), UCMJ, 10 USC § 867(a) (2) (1989), this Court may rule on this issue. *But cf. United*

*States v. Sales,* 22 MJ 305, 307 (CMA 1986) (CMR's holding that findings were multiplicious "constitutes the law of the case and binds the parties" absent certification of issue by the Judge Advocate General). The law-of-the-case doctrine does not preclude this Court, once the case has been properly granted for review, from considering an erroneous conclusion of law made by the Court of Military Review. *See Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988).

wooded area, S.K. performed fellatio on appellant before they had sexual intercourse. Appellant gave her $20.00 and then demanded the money back by threatening her with a knife. On October 3, 1988, appellant asked M.A. to ride with him in his car. In the car, appellant "pulled a knife and held it up to [her] shoulder." Appellant drove to a wooded area, demanded that she perform fellatio on him, and then had nonconsensual sexual intercourse with her. At some point, M.A. ran away from appellant, yet he caught her and dragged her back to his car. M.A. then "slipped out" of her shirt and ran to a house where she was assisted and later brought home.

On July 12, 1989, J.W. accepted a ride from appellant. He began fondling her leg and breasts, and, after stopping the car on the outskirts of town, he grabbed her purse as he pushed her out of the car. As she stood along side appellant's car, he "jerked" the car to the left, knocking her down, and drove off. Then appellant turned around, drove towards J.W., and hit her. He stopped the car, looked back at her and saw her lying on the ground with blood flowing from her head, and put the car in reverse as if to hit her again. A motorcycle and another car approached the scene, prompting appellant to drive away. J.W. was hospitalized for 1 week. Finally, on August 2, 1989, D.W. accepted appellant's offer to ride in his car. At some point, appellant stopped the car, pulled out a knife, and forced her to perform fellatio on him and engage in nonconsensual sexual intercourse. As she attempted to put her clothes on, appellant pushed her out of the car. He took $28.00 from her pocket, tossed her pants out of the car, and drove away.

Appellant was found guilty of two specifications each of rape (involving D.W. and M.A.) and of robbery[3] (involving D.W. and S.K.); as well as one specification each of sodomy (involving D.W.) and of aggravated assault (involving J.W.).

During the sentencing portion of appellant's court-martial, the Government called only one witness—Colonel William Grant. Without defense objection, the military judge accepted Col. Grant "as an expert in the area of forensic psychiatry." Based on interviews with each victim, Col. Grant first testified as to the impact of appellant's misconduct on each of the victims. Next, Col. Grant delivered what amounted to a detailed lecture on "the predictability of recidivism rates, and violence[.]" At the conclusion of Col. Grant's discussion of statistical recidivism, the factors contributing to reoffense, and an assessment of appellant's misconduct in terms of these factors, the following colloquy ensued:

TC: ... Have you been provided the OSI investigative report concerning this case?

A: Yes, I have.

Q: Have you been privy to the basic testimony that has gone on in this court-martial?

A: Yes, sir.

Q: Based upon your knowledge, your training, your experience in the field of forensic psychiatry together with the knowledge, information and understanding that you have concerning this case, concerning the evidence, *do you have an opinion as to how dangerous this accused is?*

ADC: *Your Honor, I would object to him giving an opinion on this. That calls for total speculation. He has no data base. He's never interviewed the accused, and he's being asked to predict the future and speculate. No person can do that. I would object to any testimony along that line.*

MJ: What is your response?

TC: Your Honor, we believe that question is an appropriate question for an expert witness in the field of forensic psychiatry who has become familiar with the facts and circumstances of this case. He is certainly familiar with the underlying statistics in the research in this area.

MJ: I will overrule the objection. You may answer it.

---

**3.** The court below erroneously stated that appellant was convicted of three rapes and one robbery. 35 MJ 812, 813 (1992).

A: Well, let's look at the data that we all have. He robs [S.K.] at knife point. Does this make him dangerous? It might. With just the use of the knife, you cross the line somehow when you use a weapon. It indicates a willingness to cause harm and a means to cause harm. So, even that one incident might indicate that he was dangerous.

He robs, rapes, and sodomizes [D.W.]. Again, there's a knife involved. Once it's an incident. Twice is a series. I'm getting worried that he is dangerous and violent.

He rapes [M.A.]. Again, with a knife. When she tries to run away, he chases her down and tries to drag her back to the car. Is this enough to call him dangerous?

He runs down [J.W.]. Breaks her leg in three places. He is intent as he does it, on causing grievous bodily harm. I see a pattern. Once is an incident, twice is a series, four times is clearly a pattern. And, it's a very disturbing pattern involving sex, knives, and violence. *I think I would have no choice but to conclude that this is a dangerous man.*

(Emphasis added).

The Court of Military Review considered admissibility of Col. Grant's testimony and held "that 'future dangerousness' testimony is not relevant to rehabilitative potential under RCM 1001(b) (5)." 35 MJ at 817. The court below opined that the Rules for Courts–Martial simply do not provide, during sentencing, "for consideration of future dangerousness testimony like that in this case." *Id.* at 819. The specific issue raised by the Court of Military Review's holding is whether a properly qualified psychiatric expert's predictions of future dangerousness is a proper matter for sentencing under RCM 1001(b) (5), Manual for Courts–Martial, United States, 1984.

I

■ The lower court concluded that the military judge was not influenced by Col. Grant's predictions of appellant's future dangerousness. 35 MJ at 819. This holding is supported amply by the sheer number of appellant's offenses, the lengthy period of time over which they were committed, the violent nature of his offenses, and the physical and psychological impact that appellant's sordid acts had on his victims. At most, the opinion had but a slight effect on determining an appropriate sentence. *United States v. Robinson,* 25 MJ 43, 44 (CMA 1987); *United States v. Barnes,* 8 MJ 115, 116 (CMA 1979), *on remand,* 9 MJ 921 (ACMR 1980); *see also United States v. Martel,* 19 MJ 917, 931 (ACMR 1985). Therefore, we agree with the result reached by the Air Force Court of Military Review.

■ Nevertheless, we do not accept the broad conclusion made by the Court of Military Review regarding admissibility of expert opinions or predictions about future dangerousness under RCM 1001(b) (5). It provides:

> *Evidence of rehabilitative potential.* The trial counsel may present, by testimony or oral deposition in accordance with RCM 702(g) (1), evidence, in the form of opinion, concerning the accused's previous performance as a servicemember and potential for rehabilitation. On cross-examination, inquiry is allowable into relevant and specific instances of conduct.

In *United States v. Horner,* 22 MJ 294, 295–96 (CMA 1986), this Court adopted an "expansive" interpretation of the term "potential for rehabilitation." Furthermore, since *Horner,* this Court has developed an ample body of case law regarding the limitations and application of RCM 1001(b) (5). *See, e.g., United States v. Pompey,* 33 MJ 266, 270 (CMA 1991); *United States v. Claxton,* 32 MJ 159 (CMA 1991); *United States v. Corraine,* 31 MJ 102 (CMA 1990); *United States v. Aurich,* 31 MJ 95 (CMA 1990); *United States v. Wilson,* 31 MJ 91 (CMA 1990); *United States v. Kirk,* 31 MJ 84 (CMA 1990); *United States v. Cherry,* 31 MJ 1 (CMA 1990); *United States v. Antonitis,* 29 MJ 217 (CMA 1989), *aff'd after remand,* 32 MJ 315 (CMA 1991); *United States v. Ohrt,* 28 MJ 301 (CMA 1989). These cases primarily address the foundational requirements for "an opinion concerning rehabilitation and the importance of avoiding command influence in

the sentencing process." *United States v. Pompey, supra* at 270 (citation omitted).

In reaching its conclusion, the Court of Military Review relied on two separate opinions—one in *United States v. Aurich, supra* at 96–97 n.* (Cox, J., concurring); and the other in *United States v. Claxton, supra* at 164–65 (Everett, S.J., concurring)—for the proposition that "psychiatric assessments of a prisoner's *future* dangerousness" are irrelevant to determining rehabilitative potential. 35 MJ at 817. However, the opinions relied on by the lower court specifically addressed the limits upon a *commander's* opinion of an accused's rehabilitative potential. *See, e.g., United States v. Aurich, supra* at 97 ("We are of the considered opinion that commanders should rarely testify adversely about an accused based solely on that 'commander's opinion' of the accused and his crime."). We note that these individual opinions were based principally on this Court's decisions in *United States v. Ohrt* and *United States v. Horner,* both *supra. See generally United States v. Cherry, supra* at 4 ("The primary thrust of … [*Ohrt* and *Horner* ] is that … [RCM 1001(b) (5) ] does not permit a commander to give an opinion on a servicemember's 'potential for rehabilitation' if his opinion is based solely on his view of the severity of the offense."). Nevertheless, this Court has affirmed cases in which the issue on appeal was whether an expert is permitted to offer testimony concerning an accused's ability to refrain from future similar conduct. *See United States v. Stinson* and *United States v. Gunter,* both *supra* at 135.

In *Stinson,* this Court held that a family advocacy therapist, Ms. McIntyre, could opine about an accused's "prognosis for rehabilitation." 34 MJ at 238. Staff Sergeant Stinson was found guilty by a military judge alone of committing indecent acts with a female under 16 years of age. During presentencing, Ms. McIntyre, who was qualified without objection as an expert in the field of social work, 34 MJ at 235, stated her opinion that appellant presented "[a] high risk of reoffense." 34 MJ at 236. This opinion was based on her expert knowledge of child abuse offenses, an interview with the victim, and a review of "the Office of Special Investigations … report, appellant's confession, the victim's pretrial statement, and mental health records from the Family Advocacy Program." 34 MJ at 235. Ms. McIntyre did not interview Staff Sergeant Stinson; yet this Court did not consider that to be determinative of the issue of admissibility. 34 MJ at 239, *citing Barefoot v. Estelle,* 463 U.S. 880, 903–04, 103 S.Ct. 3383, 3399–400, 77 L.Ed.2d 1090 (1983); *United States v. Hammond,* 17 MJ 218 (CMA 1984); *see also United States v. Houser,* 36 MJ 392 (CMA), *cert. denied,* —— U.S. ——, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993).

Likewise, in *Gunter,* this Court held that a qualified expert, having " 'a rational basis' upon which to form an opinion[,]" may provide testimony about the "chances" of overcoming drug addiction. 29 MJ at 142 (this "is exactly the sort of statement envisioned in *Ohrt* and RCM 1001(b) (5)"). Staff Sergeant Gunter was found guilty of wrongful use of cocaine, and Lieutenant (Lt.) Peterson, an expert in drug abuse and counseling, "opined that [Gunter]'s chances for successful rehabilitation were 'poor.' " 29 MJ at 141. This opinion was based on Lt. Peterson's training and experience regarding drug abuse and counseling, and on information from Gunter's drug rehabilitation file. There is nothing in the opinion that suggests that Lt. Peterson interviewed Gunter.

Admittedly, this Court's focus in *Stinson* was on the particular evidentiary question whether Ms. McIntyre's opinion was based on a sufficient factual basis, *see* Mil.R.Evid. 703. However, there is absolutely nothing in the opinion that suggests that this Court generally considered predictions of future dangerousness irrelevant under RCM 1001(b) (5), *Evidence of rehabilitative potential. Cf. United States v. Mays,* 33 MJ 455, 459 (CMA 1991) ("We presume that military appellate judges, … will follow the law and only consider matters properly before them[.]"). A basic inference that may be drawn from our holding in *Stinson* is that a qualified expert's testimony on future dangerousness may be relevant rehabilitative potential evidence. *See* 34 MJ at 238. In fact,

this Court's discussion of admissibility of Ms. McIntryre's testimony and opinion regarding the likelihood of reoffense begins with an assertion that "[i]n a sentencing hearing, an accused's potential for rehabilitation is a proper subject of testimony by qualified experts. RCM 1001(b) (5)." 34 MJ at 238.

Moreover, this Court cited with approval a Supreme Court decision upholding admissibility of "predictions of future dangerousness" during sentencing. 34 MJ at 239, *citing Barefoot v. Estelle, supra.* In the latter regard, we also note that the Supreme Court has asserted that "[a]ny sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose.... What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine." *Jurek v. Texas,* 428 U.S. 262, 275–76, 96 S.Ct. 2950, 2957–58, 49 L.Ed.2d 929 (1976) (footnote omitted) (Opinion of Stewart, J.), *quoted in Barefoot v. Estelle,* 463 U.S. at 897, 103 S.Ct. at 3397. Although at this time we do not attempt to further define the term "potential for rehabilitation," we conclude that the term is broad enough to encompass the type of expert opinion on future dangerousness offered by Col. Grant. *See United States v. Horner, supra.*

## II

■ Appellant next argues that the Air Force Court's decision in *United States v. Gregg,* ACM 28848, 1991 WL 85323, unpublished [4] (AFCMR April 18, 1991), entitles him to a new action by a convening authority. In this unpublished opinion the court stated:

> The convening authority here was accused of having abused his military position by acts of sexual misconduct. Appellant Gregg is convicted of predatory sexual misconduct, taking advantage of a teenage girl as to whom he had, at the father's request, established a relationship that was supervisory and approximated parental.

Appellant Kroop is convicted of conduct unbecoming an officer by engaging in adulterous affairs with an officer under his supervision and an enlisted woman. Appellant Moore is convicted of several acts involving sexual misconduct, including many offenses charged as conduct unbecoming an officer. The issue we now face is that at the time he acted on these cases, this convening authority came under suspicion of sexual misconduct himself. At what appears to have been the end of the investigation, the convening authority retired, leaving the allegations unsubstantiated but unresolved.

> Congress, acquainted with the military profession's long history of honorable service in this country, must have assumed that the convening authority would always be an honorable person whose integrity was not seriously questioned. When, as here, reports broadcast that a convening authority has been suspected of *a kind of predatory sexual misconduct that is similar to that of which an accused has been convicted,* and when, unvindicated, he and the Air Force leave the suspicion unresolved in our community, the esteem for the military justice system in that command inevitably sours. The effectiveness of law depends on the esteem in which it is held by those who are governed. *To maintain that respect, we find in these cases that the interests of justice require that each appellant have his case reviewed by a different convening authority. See, e.g., United States v. Claxton,* 32 MJ 159 (CMA 1991) (Article 66 is "a *carte blanche* to do justice").

Unpub. op. at 4 (emphasis added).

The lower court refused to grant relief on this issue based on a qualitative difference between the offenses committed by appellant and "the misconduct of which the commander was suspected[.]" 35 MJ at 820; *see also* Art. 66(c). Appellant has not shown us anything that suggests that the alleged misconduct of his convening authority resembled

4. There were two unrelated companion cases similarly decided in the same opinion. *United States v. Kroop,* ACM 28424, 1991 WL 85323 unpublished (AFCMR 1991); *United States v. Moore,* ACM 28290, 1991 WL 85323 unpublished (AFCMR April 18, 1991).

the vicious acts that were perpetrated against appellant's victims in Texas. Therefore, we hold that the Court of Military Review did not abuse its discretion in denying appellant's request to remand the case for a new action by a different convening authority. *See United States v. Kroop,* 34 MJ 628, 630 (AFCMR 1992) (noting that action was set aside in earlier opinion due to "an abundance of caution over the need to preserve the appearance of propriety in the military justice system").

The decision of the United States Air Force Court of Military Review on reconsideration is affirmed.

Chief Judge SULLIVAN and Judge COX concur.

Judge CRAWFORD did not participate.

GIERKE, Judge (concurring in part and in the result):

The first granted issue asks only whether the court below erred in finding no prejudice. I agree with the majority that the expert testimony did not prejudice appellant. I see no reason to tender an advisory opinion on the merits of the decision below that the testimony was inadmissible. Accordingly, I concur in the majority's holding that there was no prejudice, and I concur in the result.

I agree with the resolution of Issue II.

WISS, Judge (concurring in part and in the result):

The Court of Military Review held that the military judge erred in permitting Dr. Grant to testify as he did, 35 MJ 812, 819 (1992), but that appellant did not suffer any prejudice from that error. 35 MJ at 819. We granted review to consider the correctness of the holding of no prejudice. The majority agrees with the court below, and I join in that conclusion.

Then, however, the majority gratuitously visits the ungranted question whether the Court of Military Review was correct in its underlying holding in appellant's favor that the testimony was improper. In footnote 2 of its opinion, the majority explains its willingness to do so, even though this Court has not been asked forthrightly to review the correctness of that ruling via a certification from the Judge Advocate General. *See* Art. 67(a) (2), Uniform Code of Military Justice, 10 USC § 867(a) (2) (1989).

Since we dispose of the granted issue concerning prejudice as we do, no possible "manifest injustice" could be worked by our declining to expand the ambit of our review in this way. *See Arizona v. California,* 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 1391 n. 8, 75 L.Ed.2d 318 (1983) (under law of the case, court should decline to revisit prior legal ruling in a case unless prior decision was "clearly erroneous and would work a manifest injustice"). Generally, this "Court has 'hesitated' to use its review authority" concerning a holding by the Court of Military Review, the correctness of which has not been certified by the Judge Advocate General. *United States v. Ravenel,* 26 MJ 344, 350 n. 5 (CMA 1988), *citing United States v. Sales,* 22 MJ 305, 307 (CMA 1986); *United States v. Jacintho,* 21 MJ 356, 358 (CMA 1986); and *United States v. Hogan,* 20 MJ 71, 72 (CMA 1985). While this Court may have "the power to revisit prior decisions of [our] own or of a coordinate court" or of a subordinate court, "as a rule" we "should be loathe to do so[.]" *See Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). *Accord United States v. Kaliski,* 37 MJ 105, 110 (CMA 1993) (Wiss, J., concurring); *United States v. Lopez,* 35 MJ 35, 49 (CMA 1992) (Wiss, J., concurring in the result).

Accordingly, without deciding whether Dr. Grant's testimony was admissible, I accept as the law of the case that it was not; and so, as to Part I of the majority opinion, I join only the first paragraph, which holds that the testimony did not unfairly prejudice appellant. 41 MJ at 137. *Cf. United States v. Chapple,* 36 MJ 410, 412 n. 2 (CMA 1993) (without deciding correctness of military

judge's ruling concerning consent to a search, this Court "accept[ed] as the law of the case the military judge's determination that the lawfulness of the search rested on" commander's "authority to authorize" the search).