UNITED STATES, Appellee,

v.

Roger D. GEORGE, Aviation Ordnance-
man First Class (Aviation War-
fare), U.S. Navy, Appellant.

No. 99–0091.
Crim.App. No. 97–1969.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 8, 1999.

Decided March 3, 2000.

GIERKE, J., delivered the opinion of the
Court, in which SULLIVAN, J., and COX,
S.J., joined. CRAWFORD, C.J., filed an
opinion concurring in the result. EFFRON,
J., filed a dissenting opinion.

For Appellant: *Lieutenant Mari–Rae
Sopper,* JAGC, USNR (argued).

For Appellee: *Captain Michael D. Ten-
cate,* USMC (argued); *Colonel K.M. Sand-
kuhler,* USMC, *Commander Eugene E. Ir-
vin,* JAGC, USN, and *Major Clark R.
Fleming,* USMC (on brief).

Judge GIERKE delivered the opinion of
the Court.

A military judge sitting as a special court-
martial convicted appellant, pursuant to his
pleas, of communicating indecent language to
a 17–year–old Japanese girl, in violation of
Article 134, Uniform Code of Military Jus-
tice, 10 USC § 934. The military judge sen-
tenced appellant to a bad-conduct discharge,
confinement for 2 months, and reduction to
the lowest enlisted grade. In accordance
with a pretrial agreement, the convening au-
thority approved the sentence but suspended
the reduction in grade below E–4 for 12
months. The Court of Criminal Appeals af-
firmed in an unpublished opinion.

Our Court granted review of the following
issue:

WHETHER THE LOWER COURT
ERRED WHEN IT CONCLUDED
THAT THE ERRONEOUS ADMISSION
OF "FUTURE RISK" EVIDENCE DUR-
ING PRESENTENCING WAS HARM-
LESS, WHERE THE IMPROPER

HEARSAY TESTIMONY WENT DIRECTLY TO REHABILITATIVE POTENTIAL AND APPELLANT RECEIVED A PUNITIVE DISCHARGE.

For the reasons set out below, we affirm.

### Factual Background

Appellant wrote a sexually suggestive letter to a 17–year–old Japanese girl who had lived with him and his wife for one month as an exchange student. In the letter, appellant told the girl that, while she was living in appellant's house, he used to lie on her bed and masturbate while smelling her soiled panties. He told her that he had a pair of her panties with him and that he used them when he masturbated and thought of making love to her. He asked her to mail him another pair of soiled panties and a nude photograph. He offered to send her a nude photograph of himself. He described in detail his fantasy of having sexual intercourse with her.

After the Japanese girl reported the incident to the Foundation for International Understanding, her sponsoring organization, the matter was referred to the Naval Criminal Investigative Service (NCIS). Appellant was interviewed by an NCIS agent and admitted taking a pair of the girl's panties while she was living with appellant's family. He admitted sending the girl the sexually explicit letter. He also admitted writing a second letter that was much more sexually explicit. He had not yet mailed the second letter when he was interviewed by NCIS agents. The second letter describes in detail how appellant fantasized engaging in sexual intercourse, fellatio, and cunnilingus with the girl.

The NCIS searched appellant's berthing and work areas aboard his ship and seized the second letter and a pair of the girl's panties. The NCIS agents then searched appellant's house and seized some pornographic materials from appellant's computer. They interviewed appellant again, and he admitted downloading pornographic materials from the Internet. The military judge received this statement in evidence over defense objection. The prosecution conceded that it was not unlawful for appellant to possess the materials, and thus it argued that possession of the pornography was not "uncharged misconduct." The military judge stated that he would not consider appellant's possession of pornography as "uncharged misconduct." Regarding the second letter, he said, "I will consider it, but not as uncharged misconduct. I think, obviously, uncharged misconduct has the potential of unfairness because the factfinder may punish for that, but I'm not punishing—I will not consider this in punishing, but certainly I think it's something that I think I should review. I think it has some relevance here."

At the time of his court-martial, appellant had almost 16 years of honorable service, including service in a combat zone, and was a First Class Petty Officer (E–6). In May of 1989, 7½ years before this incident, appellant was convicted in a civilian court of 6 counts of indecent exposure. After this civilian conviction, a therapist diagnosed him as "not at risk to reoffend" and gave him "an excellent prognosis for successful completion of treatment." He was recommended for retention in the Navy, conditioned on successful completion of a sex-offender treatment program.

During his sentencing hearing, the Government presented testimony from a social worker. She testified that appellant's prognosis for rehabilitation was "guarded" and "questionable." In explaining the basis for her conclusion, she mentioned, over defense objection, that another therapist had concluded that appellant was "predatory in nature." The military judge overruled the defense hearsay objection on the ground that the basis for the social worker's conclusion was admissible under the medical-records or the business-record exception. See Mil.R.Evid. 803(4) and 803(6), Manual for Courts–Martial, United States (1995 ed.).* The social worker also testified that following his civilian conviction for indecent exposure, appellant had failed to "re-initiate treatment" after he was transferred from Washington State.

---

* All Manual provisions are cited to the version applicable at trial. The 1998 version is un-changed, unless otherwise indicated.

In his unsworn statement, appellant explained that he did not reinitiate therapy after his reassignment because his wife was no longer employed, CHAMPUS would not pay for therapy, and he could not afford to pay for it. He stated that the therapy cost $100 an hour.

## Discussion

Appellant now asserts that admission of improper hearsay evidence violated the Sixth Amendment and was not harmless beyond a reasonable doubt. Final Brief at 4. The Government concedes that the prosecution improperly used the social worker's testimony to smuggle hearsay into the sentencing proceeding and that the error was constitutional in nature. The Government argues, however, that the error was harmless beyond a reasonable doubt in view of the nature of the misconduct, appellant's civilian conviction, and the admissible portions of the social worker's testimony. Answer to Final Brief at 5–7.

Mil.R.Evid. 705 permits an expert to offer an opinion "without prior disclosure of the underlying facts or data, unless the military judge requires otherwise." The rule further provides: "The expert may in any event be required to disclose the underlying facts or data on cross-examination." In this case, the underlying diagnosis of appellant's predatory nature was disclosed on direct examination, not cross-examination.

In *United States v. Neeley*, 25 MJ 105, 106–07 (1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988), this Court addressed "the problem of smuggling hearsay . . . under the guise of" showing the underlying basis for expert testimony. The Court opined that Mil.R.Evid. 403 is the appropriate vehicle for weighing the probative value of showing the basis for expert opinion against the likelihood of unfair prejudice.

In *United States v. Harris*, 46 MJ 221, 225 (1997), this Court said, "Where eliciting the basis for an expert opinion will place otherwise inadmissible evidence before the court members, the military judge should apply the balancing test under Mil.R.Evid. 403 to determine if the prejudicial impact of the inadmissible evidence outweighs the probative value of showing the basis for the expert opinion."

In *United States v. Schap*, 49 MJ 317, 325–26 (1998), this Court said that "Mil.R.Evid. 403 is a judge's tool for preventing a party from *unfairly* smuggling hearsay, either as a 'basis' for an expert's opinion or under the various hearsay exceptions." We also said: "Ultimately, the military judge retains considerable discretion in deciding when the prejudice is too great to permit admission of the proffered evidence."

Evidence of the depths of an accused's sexual problems is a proper matter for consideration on sentencing. *See United States v. Ciulla*, 32 MJ 186 (CMA), *cert. denied*, 502 U.S. 857, 112 S.Ct. 172, 116 L.Ed.2d 135 (1991); *United States v. Mullens*, 29 MJ 398, 400 (CMA 1990). Likewise, evidence of future dangerousness is a proper matter under RCM 1001(b)(5), Manual, *supra*. *United States v. Williams*, 41 MJ 134, 137–39 (CMA 1994).

In appellant's case, the court below held that the military judge erred, and the Government conceded that the prosecution committed constitutional error by smuggling hearsay into the sentencing proceeding. Thus, the lower court's conclusion that the military judge erred is the law of the case. *See United States v. Grooters*, 39 MJ 269, 272–73 (CMA 1994).

In *United States v. Bins*, 43 MJ 79, 86 (1995), this Court set out the test for harmlessness when improper evidence is received: whether the evidence may reasonably have had an effect on the decision. If it did not, then the Court may conclude that the error was harmless beyond a reasonable doubt.

Both sides have characterized this case as a harmless-error case instead of a sentence-reassessment case. We agree. Our standard of review for harmless error is *de novo*. *See Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (whether constitutional error was harmless is question of law). *See also* 2 Childress & Davis, *Federal Standards of Review* § 7.03 at 7–10 (3d ed.1999)(*de novo* review of constitutional

harmless error). *Cf. United States v. Davis,* 48 MJ 494, 495 (1998) (sentence reassessment reviewed for abuse of discretion or obvious miscarriage of justice).

■ In view of the minimal period of confinement adjudged, we focus on the question whether there is a reasonable likelihood that the military judge would not have imposed a bad-conduct discharge if the social worker had not mentioned another therapist's opinion that appellant was "predatory in nature." We conclude that there is no reasonable likelihood that appellant would not have received a bad-conduct discharge, even if the evidence of appellant's diagnosis as "predatory" had been excluded. We arrive at this conclusion after considering the following:

(1) Appellant's almost 16 years of honorable service, including service in a combat zone;

(2) His previous conviction for 6 counts of indecent exposure;

(3) His prognosis for rehabilitation after his civilian conviction;

(4) The nature of appellant's misconduct involving graphic sexual overtures to a young foreign exchange student;

(5) His preparations to send another even more offensive letter to the girl; and

(6) The admissible portions of the social worker's testimony at this court-martial, setting out her prognosis for rehabilitation as "guarded" and "questionable."

Despite his many years of honorable service, appellant was a repeat offender. He had been given an opportunity to salvage his Navy career in 1989, but he put his career at risk by committing the offense at issue in this case. He was no longer a good candidate for rehabilitation. The social worker's improper reference to his predatory nature pales in comparison to his record of sexual misconduct and the seriousness of his offense. Having concluded that there is no reasonable likelihood that the military judge's error affected the sentence, we hold that the error was harmless beyond a reasonable doubt.

*Decision*

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

CRAWFORD, Chief Judge (concurring in the result):

There was no error in this case.

During the sentencing portion of the trial, Ms. Lorie Fortin was called by the prosecution to testify about appellant's rehabilitative potential. The Government did not request that the court recognize her as an expert. She stated she worked at the Family Advocacy Center, had a Master's Degree in Social Work, and was licensed in California as a clinical social worker in child sexual abuse. Her job was to "assess alleged offenders for treatment rehab potential."

Ms. Fortin testified that appellant had been referred to her in the "December January '97 time frame." (Appellant was sentenced in August 1997.) She testified that she worked with a number of other professionals including Dr. Fonseca, Dr. Sussman, and Dr. Landis, as a team in treating offenders. The team members examined progress reports, update reports, and had conversations concerning treatment.

Ms. Fortin testified that the team member who conducted appellant's psychological evaluation told her and wrote in appellant's medical record that appellant was "predatory in nature." A defense objection based on hearsay was overruled under either the medical records or business records exception to the hearsay rule. The following is the exchange which took place:

Q. Now, you bring up this prin—

A. Conviction.

Q. —therapy or treatment, do you know anything—has he told you or have you spoken with his other therapist about that treatment?

A. I've gotten some information from him and I also talked to his prior therapist and got their prior reports.

Q. Okay. And was that a positive-type treatment?

A. It was mixed. The person that did his psychological evaluation, which his current therapist as well, feel he's predatory in nature, which, again—

DC: Objection, Your Honor. This is hearsay.

MJ: Why is it not hearsay, Lieutenant Knapp?

TC: Your Honor, she's going to a medical conclusion. Not to what this person is saying so much as what his—he's been diagnosed with. So it's more of a condition rather than what his—what, perhaps, this person is saying just as a statement.

MJ: Yeah. Isn't there a medical-records exception to the hearsay rule, Lieutenant Knapp?

DC: There is—one moment, Your Honor.

MJ: I think as long as a witness is only repeating what would be in a medical record, if it is hearsay, I think that would be an exception to it.

DC: There is a statement for purposes of medical diagnosis or treatment.

MJ: Isn't the treatment also—record of treatment also an exception to the hearsay rule there? Or if it doesn't fall under that, would it not fall under the business-record exception? Wouldn't these be records that are normally kept in the normal course of business?

DC: Well, I don't believe we have a business record, sir. If she's, again, testifying from what someone else told her about what was on that business record—

WIT: No. I have it.

DC: —then that would be hearsay.

WIT: I do have it.

MJ: Do you have that record?

WIT: I have the records that they wrote in my—

MJ: You actually read that record?

WIT: Yeah.

MJ: I'll overrule the objection at this time since the accused [sic] has personal knowledge of the records.

Q. So you're taking this—your information—from reading the medical records yourself?

A. From the treatment reports that were done on him previously that the doctors wrote.

Q. Thank you. Would you say from reading all of the reports that you've read and from your treatment and consulting with the other physicians that A01 George has a high or low risk level of repeating the same or similar behavior?

DC: Objection, Your Honor. Foundation. I'm not sure if we know that Ms. Fortin is qualified to make that sort of determination.

TC: Sir, she's testified she's a licensed social worker, she's worked just with Navy for at least four years, perhaps even longer, I believe, and the fact that she's been treating this specific person.

MJ: I'll overrule that, Lieutenant McNair. I think she's qualified to give that opinion. Please answer the question.

WIT: I would say he's moderate to high risk at this time to re-offend.

R. 52–53

The court below held that "this licensed social worker was qualified to provide her observations of the nature of appellant's problems and how well he was responding to the rehabilitative therapy.... Her observations as to his history of inappropriate behavior were directly related to understanding the appellant's rehabilitative potential." Unpub. op. at 6, 1998 WL 557565.

In the alternative, the court held "that there was no reasonable possibility that he would have avoided a bad-conduct discharge." The court further reasoned that it was "confident that the military judge did not give undue weight to th[e] erroneously admitted testimony." *Id.* at 7.

The defense contends the judge erroneously considered hearsay from a witness testifying concerning appellant's sentence. Final Brief at 6.

Both Military and Federal Rule of Evidence 702 permit an individual to be qualified as an expert based on "knowledge, skill, experience, training, or education...." Ms. Fortin was clearly qualified under this standard. There is no requirement * for the prosecutor to tender Ms. Fortin as an expert based on her education, training, and experience. Mil.R.Evid. 702. In the past, however, social workers have been recognized as experts. *United States v. Johnson*, 35 MJ 17 (1992)(social worker/ psychotherapist held qualified to give her opinion that child suffered trauma—other testimony admissible without objection); *United States v. Peel*, 29 MJ 235, 241 (1989)(chief social worker with doctor of philosophy degree could testify as to significance of delayed reporting by rape victim), *cert. denied*, 493 U.S. 1025, 110 S.Ct. 731, 107 L.Ed.2d 750 (1990).

Once qualified, an expert may base her opinion on hearsay information made known to her during the course of treatment. Mil. R.Evid. 703. Specifically, we have recognized that a social worker may base her opinion not only on her observations but also upon documents and reports of others, *United States v. Raya*, 45 MJ 251, 253 (1996), when statements are reasonably related to the treatment appellant was receiving. *United States v. Rollins*, 862 F.2d 1282 (7th Cir.1988) (admitting as part of the basis for an FBI agent's expert opinion on the meaning of code language, the statements of an informant). Further, we have held that "an expert's opinion may be based upon personal knowledge, assumed facts, *documents supplied by other experts*, or even listening to the testimony at trial." *United States v. Houser*, 36 MJ 392, 399 (1993)(emphasis added). *Raya* and *Houser* support the judge's

overruling the defense objection based on hearsay.

Additionally, RCM 1001(b)(5) was greatly modified in 1994 to allow "[a]n opinion regarding the accused's rehabilitative potential...." In this instance Ms. Fortin had worked with appellant for about 8 months and certainly was qualified to render an opinion as to appellant's rehabilitative potential based on her observations and the reports she had received. The testimony that appellant is "predatory in nature," when considered in context, was testimony as to his future dangerousness. This type of evidence has been permitted by this Court, *United States v. Williams*, 41 MJ 134 (1994), and the Supreme Court, *id.* at 139.

EFFRON, Judge (dissenting):

As indicated in the majority opinion, this case does not involve the question of whether appellant's sentence was appropriate; rather the question is whether erroneous admission of a hearsay statement during the sentencing proceeding was harmless beyond a reasonable doubt. I agree with the framework of the majority's analysis but not with the result.

Erroneous admission of a hearsay statement that a person is "predatory in nature" can have a devastating impact on sentencing, particularly when the statement is characterized as a medical record. Taking into account the positive and negative evidence cited by the majority, I do not agree that the error was harmless beyond a reasonable doubt in the context of sentencing a sailor with almost 16 years of service for the offense of using indecent language.

---

* R. Carlson & E. Imwinkelried, *Dynamics of Trial Practice* 228 (2d ed.1995) (Most "judges follow the majority view" that after eliciting the "qualifications, you proceed immediately to the expert testimony" without tendering the witness.); Commentary, Ky. R. Evid. 702 (identical to Fed. R.Evid. 702) ("[T]he practice of tendering a witness [as an expert] should be discontinued"; this commentary notes "that the judge's 'annointing'" the witness should be discontinued because it could be misinterpreted as approving the

witness' testimony), cited in R. Carlson & E. Imwinkelried, *supra* at 229; ABA Civil Trial Practice Standards 17 at 46 (1998)("Except in ruling on an objection, the court should not, in the presence of the jury, declare that a witness is qualified as an expert or to render an expert opinion, and counsel should not ask the court to do so."). *See also Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir.1994); *United States v. Bartley*, 855 F.2d 547, 552 (8th Cir.1988).