# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

### Justin D. STEEN
### Boatswain's Mate Third Class (E-4), U.S. Coast Guard

**CGCMSP 24978**
**Docket No. 1464**

**15 January 2020**

Tried on 21 May and 5-9 June 2018.

| | |
|---|---|
| Military Judge: | CAPT Matthew J. Fay, USCG |
| Appellate Defense Counsel: | LCDR Benjamin M. Robinson, USCG |
| Appellate Government Counsel: | LT Zachary N. Godsey, USCG |
| | Mr. Stephen M. McCleary, Esq. |

### BEFORE
### McCLELLAND, BRUBAKER & KOSHULSKY
Appellate Military Judges

McCLELLAND, Chief Judge:

A special court-martial of officer and enlisted members convicted Appellant, contrary to his pleas, of wrongful introduction and distribution of marijuana, in violation of Article 112a, Uniform Code of Military Justice (UCMJ). The members sentenced Appellant to confinement for fifteen days, reduction to E-1, and a bad-conduct discharge, which the Convening Authority approved.

Appellant raises two assignments of error: (1) the military judge abused his discretion by admitting evidence of uncharged misconduct under Military Rule of Evidence (M.R.E.) 404(b), Manual for Courts-Martial, United States (2016 ed.); and (2) the evidence was factually insufficient to support the convictions. We agree that the military judge's admission of evidence under M.R.E. 404(b) was erroneous, but conclude it was harmless. We reject the second issue summarily, as we are convinced of Appellant's guilt beyond a reasonable doubt.

**Factual Background**

During a traffic stop, civilian police found and seized about two grams of marijuana and a marijuana pipe from the possession of Seaman Apprentice Harris.  Although they did not arrest or charge him, they informed Coast Guard authorities, who initiated an investigation.  When asked where he got the marijuana, Seaman Apprentice Harris replied that Appellant—who until recently had been his supervisor aboard Coast Guard Cutter FORWARD (WMEC 911) and was now on terminal leave—had sold him about four grams of marijuana several days prior, of which he had smoked about half.

A search of Appellant's cell phone identified phone calls between Appellant and Seaman Apprentice Harris around the time of the alleged sale, but no direct evidence of a drug sale.  Also found were several text messages Appellant sent to civilians days after the alleged sale in which he sought marijuana for his own use.

Prior to trial, Appellant's counsel moved to exclude these text messages.  The Government, giving belated notice, posited that the messages were admissible under M.R.E. 404(b) for a purpose other than showing a propensity to commit similar crimes, namely, that they made it more likely that Appellant introduced and distributed marijuana as charged because "they show that [Appellant] was out of marijuana in the days following [the date of the offenses], in that had Appellant not sold marijuana to Seaman Apprentice Harris, he would not need to procure more marijuana two days after the transaction took place."  (Appellate Ex. VII at 7.)

The military judge initially granted the Defense motion, ruling that the probative value of the evidence was substantially outweighed by the risk of unfair prejudice, confusing the issues, and wasting time.  But he added a caveat: if during trial it appeared the Defense opened the door to the evidence, he would reconsider his ruling.  That moment would come.

The Government presented its case-in-chief, which included the testimony of Seaman Apprentice Harris and surveillance videos that Seaman Apprentice Harris testified captured the meeting where Appellant sold him marijuana.  One video shows Seaman Apprentice Harris walking from a pier adjacent to the cutter to Appellant's car and getting in, and the two driving

away.  A second video shows Seaman Apprentice Harris entering the Coast Guard Exchange and withdrawing cash from an ATM.  A third video shows Appellant's car returning to the parking lot, where Seaman Apprentice Harris gets out, stops at his own truck, then returns to the cutter.

Appellant testified during the Defense case-in-chief.  He denied he sold marijuana to Seaman Apprentice Harris and contended that although the videos accurately depict him meeting with Seaman Apprentice Harris and taking him to the exchange, it was not to sell him marijuana. Instead, he asserted, he was giving him hair care products that Appellant was trying to deliver to a third shipmate.  Because Appellant was about to go on terminal leave and the shipmate was out of town, Seaman Apprentice Harris had, according to Appellant, agreed to place the hair care products on the shipmate's rack.  But on the way to meeting Seaman Apprentice Harris, he testified, he got a text message from the shipmate asking him to mail the product to his father's house.  Appellant apologized to Seaman Apprentice Harris for having him come out and offered to give him a ride to the exchange.  Toward the end of his direct testimony, Appellant offered that when he was recalled from terminal leave and returned to Coast Guard Base, Portsmouth, Virginia, he took a urinalysis and provided a hair sample with negative results and had, in addition, been drug tested twelve to fifteen times while in the Coast Guard, and had never tested positive.

With the members absent, the Government argued that this testimony opened the door to admission of the text messages.  The military judge agreed: reconsidering his earlier ruling, he ruled that based on Appellant's testimony, the evidence was proper under M.R.E. 404(b) and as impeachment under M.R.E. 608.  (R.7JUN at 186-87, 193-94; Appellate Ex. VIII.)

The Government proceeded with cross-examination, asking, "[I]s it your testimony you had no involvement with marijuana during your time in the Coast Guard?"  Appellant responded, "That is affirmative."  (R.7JUN at 204.)  The Government then confronted Appellant with the text messages, which Appellant conceded he sent.  In its rebuttal case, the Government presented testimony and exhibits detailing the results of the extraction from Appellant's phone, including the post-offense text messages in Prosecution Exhibit 5.

**Admissibility under M.R.E. 404(b)**

We review a military judge's decision to admit evidence under M.R.E. 404(b) for an abuse of discretion. *United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004). M.R.E. 404(b)(1) provides, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence may, however, "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." M.R.E. 404(b)(2).

Admissibility under M.R.E. 404(b)(2) is analyzed using the three-part test of *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989): (1) Does the evidence reasonably support a finding that the accused committed the alleged crime, wrong or other act?; (2) What fact of consequence is made more or less probable by the existence of this evidence?; (3) Is the probative value of the evidence substantially outweighed by the danger of unfair prejudice (citing M.R.E. 403)?

Here, the military judge, upon reconsideration, admitted evidence that Appellant sought to obtain marijuana for his own use in the days following his alleged sale of marijuana to Seaman Apprentice Harris. Addressing each of the three *Reynolds* prongs, he concluded that the second prong was met because the alleged act—seeking marijuana for personal use—made it more likely that Appellant sold marijuana twenty-four to seventy-two hours prior. This was so, he reasoned, because the evidence tended to show that Appellant "needed more marijuana because he had exhausted his supply through the sale to [Seaman Apprentice] Harris." (Appellate Ex. VIII at 6.) The military judge also expressed that although he initially deemed the evidence inadmissible, Appellant's testimony "changed the calculus of the balancing test" so that he no longer considered the probative value of the evidence to be substantially outweighed by the danger of unfair prejudice. (*Id*. at 7).

The military judge applied the correct analytical framework and we agree that the evidence met the low bar of the first *Reynolds* prong: it reasonably supports that Appellant

sought to obtain marijuana for personal use. But we differ with his legal conclusions regarding the remaining two prongs.

First, we disagree that evidence that Appellant sought marijuana from civilian acquaintances for his own use after he had departed Portsmouth on appellate leave makes it more probable that he introduced marijuana onto Coast Guard Base Portsmouth and sold it to a former shipmate prior to his departure. The Government's theory of relevance, adopted by the military judge, appears to hinge on a presumption that, at some point prior to his texts asking others for marijuana, Appellant had had a stock of marijuana (so that a sale to Harris could have depleted the stock); hence the texts made it more likely that Appellant had distributed marijuana to Seaman Apprentice Harris. Yet there was no evidence of any pre-existing stock. Without such evidence, the alleged act of seeking marijuana for personal use is entirely dissimilar from and logically irrelevant to the allegation that he introduced and distributed marijuana. Nothing in Appellant's direct examination made the evidence probative of his guilt of the charged offenses.

Second, whatever probative value the text messages may have had was substantially outweighed by the danger of unfair prejudice. As indicated, the probative value of this evidence to whether Appellant (had and) depleted a stock of marijuana by selling it was, to be charitable, low. On the other hand, the danger of unfair prejudice by painting Appellant as a person who used marijuana, as well as confusion of the issues, was high. We therefore conclude that the military judge abused his discretion in admitting evidence of the text messages under M.R.E. 404(b)(2).

### Admissibility under M.R.E. 608(b)

The military judge admitted and instructed on the text messages as substantive evidence under M.R.E. 404(b), not as impeachment evidence under M.R.E. 608(b). In any event, the alternative basis of admission under M.R.E. 608(b) fails as well.

M.R.E. 608 provides that the principal method of presenting evidence of a witness's *character for truthfulness or untruthfulness* is through opinion or reputation testimony. M.R.E. 608(a). Except for criminal convictions under M.R.E. 609, extrinsic evidence of specific

instances of conduct is not admissible to attack or support a witness's character for truthfulness, although a military judge may allow inquiry into them on cross-examination if probative of a witness's character for truthfulness. M.R.E. 608(b).

However, under M.R.E. 404, which governs more general character evidence, "[I]f a witness makes a broad collateral assertion on direct examination that he has never engaged in a certain type of misconduct or if he volunteers such broad information in responding to appropriately narrow cross-examination, he may be impeached by extrinsic evidence of the misconduct." *United States v. Trimper*, 28 M.J. 460, 467 (C.M.A. 1989). The *Trimper* Court explained:

> As we interpret [M.R.E.] 404(a)(1), an accused who testifies that he has never engaged in conduct like that for which he is being tried is offering evidence that he possesses the 'pertinent trait of' abstaining from such conduct. A logical—and permissible—rebuttal by the prosecution is to show that the accused previously has engaged in similar misconduct.

*Id.*

The Government argues that the extrinsic evidence offered at trial falls within *Trimper*. We disagree. Appellant's testimony on direct—that he had never tested positive for controlled substances—was neither a "broad collateral assertion on direct examination" nor a response "to appropriately narrow cross-examination." *Id.* Further, nothing the Government offered showed it to be untrue. On cross-examination, in response to a much broader question, Appellant averred that he had had no involvement with marijuana while in the Coast Guard, but when confronted with the text messages, he acknowledged them. Thus, unlike Trimper, he had not testified in a manner that the text messages rebutted. Hence the *Trimper* rationale, that no rule should "be manipulated by a defendant to permit him to commit perjury with impunity," *id.* at 466, is inapplicable.

Moreover, the evidence—both Appellant's assertion that he had never tested positive and the Government's extrinsic evidence—was beyond collateral: it was utterly irrelevant to whether Appellant had introduced and distributed marijuana. Unlike Trimper's unsolicited assertion— that even outside of the period he was charged with using cocaine, he had *never* used cocaine, *id.* at 467—Appellant's assertion that he had never tested positive for using drugs was not probative

of whether he was the type of person who would *introduce* and *sell* drugs. A better response to Appellant's gratuitous testimony might have been an instruction to disregard it because whether Appellant had been drug tested and what the results may have been had no bearing on the charges in this case.

The military judge thus abused his discretion when, following direct examination, he ruled that the text messages were alternatively admissible under M.R.E. 608. Once on cross-examination, the Government was not entitled to extract a broader assertion from Appellant, then offer evidence to the contrary. *See United States v. Maxwell*, 21 M.J. 229, 230 (C.M.A. 1986) ("The key here is that the prosecution cannot turn a defense witness into a character witness through cross-examination and, thereby, bootstrap otherwise inadmissible evidence into the case.").[1]

## Prejudice

"[T]he test for prejudice is whether the error had a substantial influence on the findings." *United States v. Frost*, 79 M.J. 104, 111 (C.A.A.F. 2019) (quoting *United States v. Flesher*, 73 M.J. 303, 318 (C.A.A.F. 2014)). We weigh "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.; United States v. Kerr,* 51 M.J. 401, 405 (C.A.A.F. 1999).

The Government's case was strong, although not overwhelming. The surveillance videos are certainly corroborative of Seaman Apprentice Harris's testimony, but they only show Seaman Apprentice Harris getting into Appellant's car, Seaman Apprentice Harris at an ATM, and Seaman Apprentice Harris leaving Appellant's car and stopping at his truck, but not any marijuana or any transaction between the two. Hence, Seaman Apprentice Harris's credibility was important to the Government's case.

The Defense did attack Seaman Apprentice Harris's credibility. Its theory was that Seaman Apprentice Harris was untrustworthy, that he was on his way to meeting his actual,

---

[1] In the event, as already noted, the evidence was not contrary to Appellant's testimony.

civilian source of marijuana when stopped by police, told them what they wanted to hear to avoid civilian arrest or charges, then concocted a story that Appellant was his source of marijuana when confronted by Coast Guard investigators in order to leverage a better bargain for himself in resolving his charges. The videotaped meeting between Appellant and Seaman Apprentice Harris, the Defense posited, was actually so that Appellant could give hair care products to Seaman Apprentice Harris so that Seaman Apprentice Harris, in turn, could deliver them to a shipmate. Though a seemingly unlikely story, the Defense presented evidence that, in fact, a shipmate had hair care products delivered to Appellant's apartment to avoid the delay of receiving packages on a ship, and later asked Appellant to send those products to his father's house. (Appellant still had the products at the time of trial.)

At least as important are the final two factors: the nature of the evidence itself and how it was used. Evidence that Appellant repeatedly implored others for "bud" and "green" and needed to stop using it but "truly enjoy[ed] it" (Prosecution Ex. 5 at 4, 5, 7), was irrelevant, inflammatory, and risked its impermissible use for propensity purposes. However, the instructions and argument on the evidence probably did not amplify the problematic nature of the evidence. The military judge instructed members that they may

> consider evidence that [Appellant] may have texted about purchasing or smoking marijuana in the days following the alleged misconduct for the limited purpose of its tendency, if any, to prove the Government's allegation that [Appellant] allegedly needed to replenish *his supply of marijuana* based on their allegation that [Appellant] had sold marijuana to Seaman Apprentice Harris.

(R.8JUN at 147) (emphasis added.)

Consistently, the Government in its closing argument asserted, "Forty-eight to seventy-two hours after [the alleged distribution], [Appellant] was seeking out more marijuana. Marijuana which he wouldn't need unless he was out from distributing what he had to Seaman Harris . . . ." (R.8JUN at 163.)

Both the instruction and the Government's argument invited the members to presuppose that Appellant had a "supply of marijuana" (R.8JUN at 147), and that the fact that he was seeking more tended to show that he had depleted this ghost supply by selling it to Seaman Apprentice

8

Harris.  Although this gave a judicial nod to the members to assume facts not in evidence, the instruction limited them from considering the evidence as propensity evidence, thus minimizing prejudice from its inflammatory nature.  "Court members are presumed to follow the military judge's instructions.  Thus, we must presume that the court members considered the evidence" for the limited purpose upon which they were instructed.  *United States v. Matthews*, 53 M.J. 465, 471 (C.A.A.F. 2000) (citation omitted).[2]  That purpose, as defense counsel argued (R.8JUN at 193), had little or no bearing on the case logically; the evidence was not material to the case.  For that reason, we think the members gave it no weight.

Weighing the four factors together, we conclude that the erroneous admission of uncharged, post-offense drug involvement was harmless.  *See* Article 59(a), UCMJ.

## Decision

We determine that the findings and sentence are correct in law and fact and, on the basis of the entire record, should be approved.  Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judge KOSHULSKY concurs.

BRUBAKER, Judge (concurring in part and dissenting in part):

I fully concur that evidence of Appellant's uncharged misconduct of seeking marijuana for his own use while on terminal leave had no relevance to the earlier, charged misconduct of introducing and distributing marijuana and that it was inadmissible under either M.R.E. 404(b) or M.R.E. 608.  I part ways, however, with my colleagues' conclusion that this error was harmless.  I would find the error prejudicial and set aside the findings and sentence.  I thus respectfully dissent in the result.

"The test for nonconstitutional evidentiary error is whether the error had a substantial influence on the findings.  It is the government that bears the burden of demonstrating that the

---

[2] In *Matthews*, the instruction was upon an improper purpose, so the presumption was that the members considered the evidence for that improper purpose.

admission of erroneous evidence is harmless." *United States v. Fetrow*, 76 M.J. 181, 187 (C.A.A.F. 2017) (internal quotation marks and citations omitted). To evaluate whether erroneous admission of evidence is harmless, we weigh: (1) the strength of the Government's case; (2) the strength of the Defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question. *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999).

Applying these standards, I do not believe the Government has met its burden of demonstrating the error was harmless. The Government's case was reasonably strong, but not overwhelming. *Cf., e.g., United States v. Humpherys*, 57 M.J. 83, 93 (C.A.A.F. 2002). With no direct corroboration that Appellant sold marijuana to Seaman Apprentice Harris when they met in the parking lot, the relative credibility of Seaman Apprentice Harris and Appellant was significant. The Defense, for its part, was able to poke holes in Seaman Apprentice Harris's credibility and offer evidence supporting an alternative theory of the case.

The evidence in question hurt Appellant's credibility and was highly prejudicial. As the majority notes, "[e]vidence that Appellant repeatedly implored others for 'bud' and 'green' and needed to stop using it but 'truly enjoy[ed] it' was irrelevant, inflammatory, and risked its impermissible use for propensity purposes." (Slip op. at 8 (internal citation omitted).)

But most troubling to me is how the members were invited to use the evidence. As the majority concedes, the military judge's instructions and the trial counsel's argument "invited the members to presuppose that Appellant had a 'supply of marijuana' and that the fact that he was seeking more tended to show that he had depleted this ghost supply by selling it to Seaman Apprentice Harris." (*Id*. at 8–9 (internal citation omitted).) This invitation to make such a damning—and unsupported—presupposition exacerbated the error rather than limiting it. The presumption that members follow the military judge's instructions, then, actually works against the Government and "we must presume that the court members considered the evidence . . . *for an improper purpose*." *United States v. Matthews*, 53 M.J. 465, 471 (C.A.A.F. 2000) (citation omitted) (emphasis added).

On the whole, I have no confidence that the members, in reaching their verdict, were not substantially influenced not only by the erroneously-admitted evidence, but by the improper inference that Appellant had access to a ready supply of marijuana such that asking others for marijuana to use was evidence that he had depleted his supply. I would conclude the error was prejudicial and set aside the findings and sentence.



For the Court,


Sarah P. Valdes
Clerk of the Court