*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Justin D. STEEN, Boatswain's Mate Third Class**
United States Coast Guard, Appellant

**No. 20-0206**
Crim. App. No. 1464

Argued January 13, 2021—Decided June 14, 2021

Military Judge: Matthew J. Fay

For Appellant: *Lieutenant Carolyn M. Bray* (argued).

For Appellee: *Lieutenant Nicholas J. Hathaway* (argued); *Mark K. Jamison*, Esq. (on brief); Captain Vasilios Tasikas.

Chief Judge STUCKY delivered the opinion of the Court, in which Judge OHLSON and Judge HARDY joined. Judge SPARKS filed a separate dissenting opinion, in which Judge MAGGS joined. Judge MAGGS filed a separate dissenting opinion, in which Judge SPARKS joined.

————————

Chief Judge STUCKY delivered the opinion of the Court.

The United States Coast Guard Court of Criminal Appeals (CCA) held that the military judge abused his discretion in admitting propensity evidence, in violation of Military Rule of Evidence (M.R.E.) 404(b), but that Appellant was not prejudiced by the error. We granted review to determine whether the CCA's holding on the prejudice issue was correct. We hold that it was not.

## I. Facts

The CCA described the facts of the case:

> During a traffic stop, civilian police found and seized about two grams of marijuana and a marijuana pipe from the possession of Seaman Apprentice [(SA)] Harris. Although they did not arrest or charge him, they informed Coast Guard authorities, who initiated an investigation. When asked where he got the marijuana, [SA] Harris replied that Appellant— who until recently had been his supervisor aboard

Coast Guard Cutter FORWARD (WMEC 911) and was now on terminal leave—had sold him about four grams of marijuana several days prior, of which he had smoked about half.

A search of Appellant's cell phone identified phone calls between Appellant and [SA] Harris around the time of the alleged sale, but no direct evidence of a drug sale. Also found were several text messages Appellant sent to civilians days after the alleged sale in which he sought marijuana for his own use.

*United States v. Steen*, No. 1464, 2020 CCA LEXIS 32, at \*2, 2020 WL 808380, at \*1 (C.G. Ct. Crim. App. Jan. 15, 2020) (unpublished).

Before arraignment, Appellant moved to suppress the text messages as inadmissible character evidence. The prosecution responded, asserting they were admissible under M.R.E. 404(b) for another purpose—to show that Appellant was out of marijuana a few days after he allegedly sold it to SA Harris. The theory was that this demonstrated a plan to continually acquire and distribute marijuana. The military judge granted the motion to suppress but advised the prosecution he would reconsider his ruling if the prosecution thought the defense opened the door to the evidence.

At trial, Appellant took the stand, denied the allegations, and offered an alternative narrative to explain his interaction with SA Harris. Prior to cross-examination, the prosecution moved the military judge to reconsider the motion to suppress. The military judge ruled that by testifying that he had not sold marijuana to SA Harris, Appellant opened the door for the text message to be introduced. Appellant was then cross-examined about the text messages, and he admitted sending them.

At the end of trial, the military judge instructed the members that they could:

consider evidence that [Appellant] may have texted about purchasing or smoking marijuana in the days following the alleged misconduct for the limited purpose of its tendency, if any, to prove the Government's allegation that [Appellant] allegedly needed to replenish his supply of marijuana based on their

allegation that [Appellant] had sold marijuana to
Seaman Apprentice Harris.

You may not consider this evidence for any other
purpose and you may not conclude from this evi-
dence that [Appellant] is a bad person or has general
criminal tendencies and that he therefore committed
the offenses charged.

The special court-martial convicted Appellant, contrary to
his pleas, of wrongful introduction onto a military installation
and distribution of marijuana, in violation of Article 112a,
Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a
(2012). The members sentenced Appellant to a bad-conduct
discharge, confinement for fifteen days, and reduction to the
grade of E-1. The CCA held that the texts were inadmissible
under M.R.E. 404(b) but, finding no prejudice, affirmed the
findings and sentence. *Steen,* No. 1464, 2020 CCA LEXIS 32,
at *10–15, 2020 WL 808380, at *2–5.

## II. Law

We granted review of Appellant's petition alleging that he
was prejudiced by the M.R.E. 404(b) evidence provided to the
court members that the CCA determined was erroneously
admitted.[1]

The question at this stage, which we review *de novo,*
is whether the nonconstitutional error had a sub-
stantial influence on the members' verdict in the

---

[1] Contrary to the two dissenting opinions, we are not holding
that the granted issue somehow limits this Court's authority to re-
view whether the text messages were properly admitted into evi-
dence. We merely conclude that the CCA's holding that the texts
were not admissible under M.R.E. 404(b) was correct and thus un-
necessary for us to duplicate. Both dissenting opinions rely on
*United States v. Trimper* for the proposition that Appellant's truth-
ful testimony that he had never failed a drug test while in the Coast
Guard permitted the Government to impeach his testimony using
extrinsic evidence of his drug use. 28 M.J. 460, 467 (C.M.A. 1989).
The CCA expressly rejected this argument and we do as well. As
the CCA noted, this Court's holding in *Trimper* does not apply here
because "Appellant's testimony on direct—that he had never tested
positive for controlled substances—was neither a 'broad collateral
assertion on direct examination' nor a response 'to appropriately
narrow cross-examination.'" *Steen*, No. 1464, 2020 CCA LEXIS 32,
at *10, 2020 WL 808380, at *3 (quoting *Trimper*, 28 M.J. at 467).

context of the entire case. In answering this question, we consider four factors: (1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question. When a fact was already obvious from . . . testimony at trial and the evidence in question would not have provided any new ammunition, an error is likely to be harmless. Conversely, where the evidence *does* provide new ammunition, an error is less likely to be harmless.

*United States v. Yammine*, 69 M.J. 70, 78 (C.A.A.F. 2010) (alteration in original) (internal quotation marks omitted) (citations omitted). The Government bears the burden of showing any error was harmless. *United States v. Fetrow,* 76 M.J. 181, 187 (C.A.A.F. 2017).

### III. Discussion

*The Government's Case.* The prosecution's case was fairly weak. It turned on the testimony of SA Harris, who had significant credibility issues. Seaman Apprentice Harris lied about knowing anyone other than Appellant who could provide him with drugs; he "wipe[d]" his phone as soon as civilian law enforcement stopped him for running a red light; the video which purportedly supports SA Harris's version of events could also support Appellant's version of events; there were text messages between SA Harris and Appellant around the time of the alleged sale but none of them referred to the alleged drug sale; and SA Harris had a motive to identify Appellant as his dealer—a favorable plea deal.

Seaman Apprentice Harris testified that Appellant had sold him marijuana on November 4, 2017, and video surveillance footage corroborated that the two had met on that date, and that Appellant had driven SA Harris to an ATM. Two days later, SA Harris was found in possession of two grams of marijuana.

*Appellant's Case.* Appellant's case was not very strong. Appellant presented a plausible, if unlikely, account of his actions with SA Harris. He testified that he met up with SA Harris to give him some hair products to pass on to Seaman Hind. Seaman Hind testified that Appellant did have his hair

products, though he did not know that Appellant was planning on delivering them via SA Harris.

*Materiality* and *Quality*. Materiality is a common law term that has been merged with the concept of relevance under the Military Rules of Evidence. *See* Stephen A. Saltzburg et al., 1 *Military Rules of Evidence Manual* § 401.02[2] (8th ed. 2015). The term "materiality" refers to a "fact [that] is of consequence in determining the action." M.R.E. 401(b). The fact that Appellant texted a friend a few days after the charged offense in an effort to obtain some marijuana is not of consequence in determining whether he distributed marijuana to a shipmate. Nevertheless, the prosecution's evidence, which was of good quality, establishing Appellant was seeking marijuana, implied his stash had been depleted through distribution to others. And the military judge instructed the members that this was a permissible inference.

*New Ammunition.* This is clearly a case where the improper evidence produced "new ammunition" for the prosecution. *See Yammine*, 69 M.J. at 78 (internal quotation marks omitted) (citation omitted). In a case of dueling testimonies, the prosecution presented the text messages as evidence that Appellant was familiar with, and sought out, marijuana. In them, Appellant mentioned that he needed "bud" and "green" and that he "need[ed] to stop but truly enjoy[ed] it." Such evidence was found nowhere else in the record, it significantly strengthened the prosecution's case, and the members were able to take into the deliberation room Prosecution Exhibit 5, which reproduced the text messages verbatim. This case boiled down to a credibility battle between Appellant and SA Harris, who had his own credibility issues. The text messages completely undermined Appellant's theory of the case and permitted the prosecution to argue that Appellant "was seeking out more marijuana. Marijuana which he wouldn't need unless he was out from distributing what he had to Seaman Harris on the 4th of November." More importantly, the military judge instructed the members that they could infer from the texts that Appellant had a preexisting supply that he needed to replenish.

While the military judge did instruct the members that they could not use the text messages to show that Appellant was a bad person or had a propensity to use drugs, he did

instruct them that they could use inadmissible evidence to infer facts about Appellant that were unavailable from any other source. We presume that the members followed the military judge's instructions, and therefore "we must presume that the court members considered the evidence . . . for an improper purpose." *United States v. Matthews,* 53 M.J. 465, 471 (C.A.A.F. 2000).

In Appellant's case, where the determining factor was the relative credibility of SA Harris, a witness with transactional immunity and a favorable deal—nonjudicial punishment rather than court-martial—inadmissible evidence that damaged the accused's credibility, and invited the members to assume facts not in evidence, created a high bar for the Government to show that the admission was harmless. The Government has not met that bar here.

## IV. Judgment

The judgment of the United States Coast Guard Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record shall be returned to the Judge Advocate General of the United States Coast Guard. A rehearing is authorized.

Judge SPARKS, dissenting.

I am disappointed that the majority has chosen to resolve the salient issue in this case in a footnote, namely, whether the text messages at issue were properly admitted. Particularly where, as in this case, the parties vigorously contested the issue in their briefs. I believe the text messages at issue were admissible under *United States v. Trimper*, 28 M.J. 460 (C.M.A. 1989), a case in which this Court upheld a military judge's decision to admit certain evidence in order to impeach the credibility of the accused and to rebut a pertinent character trait offered by the defense. However, the error in this case was the trial judge's instruction to the members regarding how they should consider the text message evidence. Since I believe the text messages were admissible and that the military judge's erroneous instruction was harmless, I must respectfully dissent. I join Judge Maggs in his thoughtful dissent as well.

## I. Factual Background

This case began with the routine traffic stop of one Seaman Apprentice Harris by a local police officer who seized about two grams of marijuana and a marijuana pipe from Harris. *United States v. Steen*, No. 1464, 2020 CCA LEXIS 32, at *2, 2020 WL 808380, at *1 (C.G. Ct. Crim. App. Jan. 15, 2020). Although Harris was not charged by civilian police, Coast Guard authorities were contacted and an investigation ensued. *Id.* When questioned by authorities about how he received the marijuana, Harris stated Appellant, who until recently had been his supervisor aboard the Coast Guard cutter Forward (WMEC 911) and was now on terminal leave, sold it to him several days prior on November 4, 2017. *Id.*

During the investigation, Coast Guard authorities searched Appellant's cell phone and discovered calls between him and Harris around the time of the alleged distribution; however, no direct evidence of the drug transaction could be found. *Id.* Also recovered during the search were several text messages Appellant sent to two civilians after the date of the alleged distribution to Harris, indicating that Appellant was seeking marijuana for his own personal use. *Id.* Video footage from a camera affixed to the pier near the Forward's location

was obtained, showing Appellant and Harris meeting in Appellant's vehicle on the day in question. 2020 CCA LEXIS 32, at \*3, 2020 WL 808380, at \*1.

Prior to trial, Appellant's counsel moved to suppress the text messages. *Id*. at \*2–3, 2020 WL 808380, at \*1. The Government asserted the text messages were admissible under Military Rule of Evidence (M.R.E.) 404(b) for a purpose other than to show a propensity to commit similar crimes. *Id*. The Government argued the messages made it more likely than not that Appellant introduced and distributed marijuana because they showed Appellant was out of marijuana in the days following the offenses, such that he needed more marijuana to "replenish his supply" after his sale to Harris. *Id*.

The military judge initially granted the defense motion, ruling that the probative value of the evidence did not substantially outweigh the risk of unfair prejudice, would cause confusion of the issues, and waste time. *Steen*, 2020 CCA LEXIS 32, at \*3, 2020 WL 808380, at \*1. However, the military judge added a caveat: if during the trial, the defense counsel "opened the door" to the text message evidence, he would reconsider his ruling. *Id*.

During the Government's case-in-chief, the video footage from the camera affixed to the pier was admitted showing what Harris claimed to be the meeting during which Appellant sold him the marijuana. *Id*. One video showed Harris walking from a pier adjacent to Appellant's vehicle, getting inside the vehicle, and the two driving away together. *Id*. A second video showed Harris entering the Coast Guard Exchange and walking up to an automated teller machine (ATM). *Id*. at \*3–4, 2020 WL 808380, at \*1. A third video showed Appellant's vehicle returning to the parking lot where Harris's vehicle was parked, Harris exiting the vehicle, and stopping at his own vehicle before finally returning to the ship. *Id*. at \*4, 2020 WL 808380, at \*1.

Harris testified that in early November of 2017, he was hoping to procure some marijuana so that he could fail a drug test and be discharged from the Coast Guard. He learned that

Appellant was someone who could procure the substance for him. Previously, Appellant had been his immediate supervisor aboard the Forward. He further testified that Appellant texted him on November 4, stating that he could provide him some amount of marijuana. According to Harris, Appellant instructed him to proceed to a parking lot near where the Forward was moored. Harris testified that he disembarked the ship, walked down the pier and got in Appellant's vehicle. Once inside the vehicle, he explained to Appellant that he "didn't have any cash" to pay for the marijuana. Appellant then drove Harris to the Coast Guard Exchange so Harris could withdraw funds from an ATM. After withdrawing the funds from the ATM, Harris returned to the vehicle and paid Appellant in exchange for the marijuana. According to Harris, Appellant then drove him back to the lot where his vehicle was parked. He got out, proceeded to his vehicle to stow the marijuana, and returned to the ship.

Appellant testified during the defense case-in-chief that he did not sell marijuana to Harris; rather, he only met with him on the pier to give him some hair care products that he wanted delivered to another crew member stationed onboard the Forward, one Seaman Hind. *Steen,* 2020 CCA LEXIS 32, at *4, 2020 WL 808380, at *2. According to Appellant, because he was preparing to go on terminal leave and Hind was out of town, Harris agreed to deliver the hair products and place them in Hind's berthing space aboard the ship. *Id.* However, according to Appellant, on the way to meeting Harris, Appellant received a text message from Hind asking him to mail the products to his father's house instead. *Id.* After Appellant arrived, he apologized to Harris for having him come out to the car and offered to give him a ride over to the exchange. *Id.* Harris testified that he never discussed any hair care products with Appellant. Hind testified that at an earlier point in time, he had indeed ordered some hair care products to be delivered to Appellant's residence, but had no knowledge of any plan to have Harris deliver the hair care products to the ship. Furthermore, Appellant admitted he never told Hind about any plan to have Harris deliver the hair products to the ship. Finally, Appellant admitted that as of the day of trial, June 7, 2018, he still had not delivered Hind's hair products to him.

**The text messages**

Toward the end of Appellant's direct examination, defense counsel asked Appellant how many drug tests he had taken during his time in the Coast Guard and whether he had ever failed a drug test. Appellant answered that he had been tested "maybe close to twelve, fifteen times" and had not failed any." With the members absent, the Government argued that this testimony opened the door to the previously suppressed text message evidence. *Id.* at *5, 2020 WL 808380, at *2. The military judge agreed, reconsidered his earlier ruling, and ruled that based on Appellant's testimony on direct examination, the text message evidence was admissible under M.R.E. 404(b) and M.R.E. 608(b) as impeachment evidence. *Id.* He also specifically found that the text messages were proper rebuttal to Appellant's statement that he had never failed a drug test. The Government proceeded with cross-examination, asking Appellant, "[I]s it your testimony you had no involvement with marijuana during your time in the Coast Guard?" *Id.* (alteration in original) Appellant responded, "affirmative." *Id.* There was no objection from the defense to this question or to Appellant's response. The Government then confronted Appellant with the previously suppressed text messages to his sister and a friend, which Appellant admitted he sent. *Id.* During the Government's cross-examination of Appellant, the following exchange occurred concerning the text messages exchanged between Appellant, his sister, and Appellant's friend, Isaiah:

> Q: Petty Officer Steen, following your departure from Base Portsmouth, you sent some text massages. You agree you sent some text messages to some contacts in your phone, correct?
>
> A: Yes, sir.
>
> Q: And those contacts were in Charlotte?
>
> A: Yes, sir.
>
> Q: And was one of those contacts Isaiah?
>
> A: Yes, sir.

. . . .

Q: And you'd agree that you asked your friend, you asked Isaiah through text message, quote, who got the bud though?

A: Yes, sir.

Q. And you agree that bud was referring to marijuana?

A. Yes, sir.

Q: And that was on 6 November?

A: Yes, sir.

Q: While you were still on active duty?

A: Yes, sir.

. . . .

Q: And in fact, at some point in that exchange Isaiah texted you back and said when do you need it, referring to the marijuana; correct?

A: Yes, sir.

Q: And your response, you stated, quote, sh[**], everyone out, lol, unquote. Is that correct?

A: Yes, sir.

Q: So a little bit later that evening, now you testified, a little bit later that evening you texted . . . Brittany; Is that correct?

. . . .

Q: You texted your sister Brittany; correct?

A: Yes, I did.

. . . .

Q: And you stated, quote, I want to smoke.

A: Yes sir. Me and her smoke a little bit at my mother's house.

Q: So a little bit later on that evening, you continue your discussion with Isaiah; correct?

A: Yes, sir.

Q: And at some point, did Isaiah tell you quote, he out of weed, lol, unquote?

A: Yes sir.

Q: And sometime later in that conversation did [he] say, quote, thought you were done, unquote?

A: Yes, sir. (inaudible 3:46:02).

Q: Referring to smoking marijuana?

A: Yes sir.

Q: And later on, a little bit later your response to that text message, do you agree that you stated, quote, sh[**], I need to stop but I truly enjoy it, unquote?

A: Yes sir.

Q: Referring to marijuana?

A: Yes, sir.

Q: So prior to your, prior to that, is it your, it was your testimony that you had a friend that you knew could get marijuana, prior to 4 November, correct?

A: I didn't know if he could get marijuana. I know he smokes, sir. That is.

Q: But you'd agree that isn't the only time you sought out marijuana; correct?

A: I was on terminal leave, so I thought I was out, which I really wasn't. So I did hit up Isaiah, yes sir.

In its rebuttal case, the Government presented, along with other evidence, the text messages sent by Appellant after the alleged transaction with Harris. Prior to argument on findings, the military judge advised the members regarding how they could use the text message evidence in their deliberations with the following instruction:

> During the trial, evidence was presented that BM3 Steen may have texted about attempting to purchase or smoke marijuana. Additionally, evidence was presented that BM3 Steen believed that he had permanently detached from the Coast Guard once he had departed the Portsmouth, Virginia, area on terminal leave.

> You may consider evidence that Petty Officer Steen may have texted about purchasing or smoking marijuana in the days following the alleged misconduct for the limited purpose of its tendency, if any, to prove the Government's allegation that BM3 Steen allegedly needed to replenish his supply of marijuana based on their allegation that BM3 Steen had sold marijuana to Seaman Apprentice Harris.

> You may not consider this evidence for any other purpose and you may not conclude from this evidence that Petty Officer Steen is a bad person or has general criminal tendencies and that he therefore committed the offenses charged.

Following Defense counsel's closing argument, the military judge repeated verbatim his instruction to the members regarding Appellant's text messages to his sister and his friend Isaiah.

During its closing argument, the Government did not directly address the text messages. However, trial counsel maintained that Appellant must have possessed some amount of marijuana because otherwise, he would not need to obtain more had he not sold what he previously possessed to Harris.

## II. Discussion
### Admissibility of the text messages

Appellant argues that the text messages are not relevant because they did not make it more probable than not that he distributed marijuana to Harris several days before. Even if this were true, under *United States v. Trimper,* 28 M.J. 460 (C.M.A. 1989), the text messages were proper impeachment and rebuttal evidence to Appellant's statement on direct examination and trial counsel's question on cross-examination. Interpreting M.R.E. 608(b) and M.R.E. 404(b), this Court in *Trimper* held that, "if a witness makes a broad collateral assertion on direct examination that he has never engaged in a certain type of misconduct or if he volunteers such broad information in responding to appropriately narrow cross-examination, he may be impeached by extrinsic evidence of the misconduct." *Id.* at 467 (citations omitted). Similarly, the Court held that under the rebuttal provision of M.R.E. 404(a):

> An accused who testifies that he has never engaged in conduct like that for which he is being tried is offering evidence that he possesses the 'pertinent trait of' abstaining from such conduct. A logical—and permissible—rebuttal by the prosecution is to show that the accused previously has engaged in similar misconduct.

*Id.*

Here, Appellant testified in response to defense counsel's question on direct examination that during his time in the Coast Guard, he had been tested for drugs "close to twelve, fifteen times," and had not failed even one of those tests.

The military judge found that Appellant provided strident testimony that he had never failed a drug test, and by inference, had never used marijuana while on active duty. This finding is not clearly erroneous. Appellant testified in response to defense counsel's question on direct examination that during his time in the Coast Guard, he had been tested for drugs "close to twelve, fifteen times," and had not failed even one of those tests. This testimony could be relevant only because of its tendency to show that he never used marijuana

8

while in the Coast Guard. Having elicited this broad denial from Appellant, trial counsel was free to cross-examine him on the text messages to show that he had in fact been "involved" with drugs while still on active duty. Likewise, Appellant's response was evidence of a pertinent character trait, namely, that he was not one who involved himself with drugs. The extrinsic evidence in the form of the text messages was a logical and proper rebuttal to this claimed character trait.

**The military judge's instruction**

Having concluded the text messages were admissible, I see the remaining issue as whether the military judge's instruction to the members regarding how this evidence should be used was prejudicial error. Under *Trimper*, the text messages could not be used as substantive evidence, but could be used as rebuttal evidence to Appellant's offered pertinent character trait. 28 M.J. at 467–68. Here, the trial judge advised the members that they could use the text messages as substantive evidence of the messages' tendency, if any, to prove the Government's relatively weak theory that Appellant was seeking to replenish his stock of marijuana that was depleted after his distribution to Harris. The text messages did very little to advance this replenishment theory. Any concerns about the potential inflammatory nature of the evidence were mitigated because the military judge properly instructed the members that the evidence could not be used for propensity purposes and it is assumed the members followed that instruction.

At issue in this case was Appellant's credibility. Notwithstanding the fact that Appellant admitted sending the text messages, they could properly be used by the members to assess his credibility. Moreover, Appellant's version of the facts was implausible. For instance, regarding Hind and his hair care products, Appellant could not credibly explain why he had not told Hind of the plan to have Harris deliver the products to Hind's shipboard berthing space, particularly since there was no evidence that Hind and Harris knew each other. Therefore, I conclude this erroneous instruction was harmless.

In view of the foregoing, I respectfully dissent.

Judge MAGGS, with whom Judge SPARKS joins, dissenting.

I disagree with the Court's conclusion that the evidence at issue in this case was not admissible. *United States v. Steen*, __ M.J. __, __ (3 n.1) (C.A.A.F. 2021). As Judge Sparks explains, the military judge did not abuse his discretion in admitting the evidence based on the military judge's finding of fact and our prior decision in *United States v. Trimper*, 28 M.J. 460 (C.M.A. 1989).[1] I therefore join Judge Sparks's dissent.

I write separately to address Appellant's assertion that the law of the case doctrine prevents the Court from considering the admissibility of the evidence in this appeal because the Government did not certify that issue to the Court. As I explain below, the "cross-appeal doctrine" announced by the Supreme Court of the United States permits the Government to defend the decision of the CGCCA on any ground because the Government prevailed below and is merely seeking affirmance of the CGCCA's judgment. Accordingly, the Court acts properly in addressing the merits of the admissibility issue, as does Judge Sparks in his dissenting opinion.

---

[1] The military judge found that Appellant "provided strident testimony [during direct examination] that he had never failed a drug test—*and by inference had never used marijuana while on active duty*." (Emphasis added.) Based on this finding of fact about the meaning of Appellant's testimony, I agree with Judge Sparks that Appellant made a "broad collateral assertion on direct examination," within the meaning of *Trimper*, that he had not used marijuana while on active duty. *Steen,* __ M.J. at __ (8) (Sparks, J., dissenting) (quoting *Trimper*, 28 M.J. at 467). Accordingly, the military judge did not abuse his discretion in admitting the Government's rebuttal evidence. *Trimper*, 28 M.J. at 467. I do not understand how the Court can reach a contrary conclusion without determining that the military judge's finding of fact was clearly erroneous. *See Steen,* __ M.J. at __ n.1 (3 n.1). The Court's reliance on the decision of the United States Coast Guard Court of Criminal Appeals (CGCCA) is unpersuasive because the CGCCA also did not find that the military judge's finding of fact was clearly erroneous.

## I. Procedural Posture and Arguments on Appeal

The procedural posture of this case is easily stated. At trial, the military judge admitted certain text messages over Appellant's objection. On appeal to the CGCCA, one of Appellant's assignments of error was that the military judge abused his discretion in admitting the text messages. *United States v. Steen*, No. 1464, 2020 CCA LEXIS 32, at *1, 2020 WL 808380, at *1 (C.G. Ct. Crim. App. Jan. 15, 2020). Addressing this issue, the CGCCA concluded that the military judge had abused his discretion in admitting the evidence, but determined that the error did not prejudice Appellant. *Id.* at *14, 2020 WL 808380, at *5. This Court then granted Appellant's petition for review on the assigned issue of whether admission of the text messages prejudiced Appellant.[2]

In his opening brief to this Court, Appellant focused almost exclusively on the issue of prejudice. Appellant addressed the issue of admissibility only to say that he agreed with the CGCCA's decision. The Government responded in its brief with extensive argument on both the issue of admissibility and the issue of prejudice. In his reply brief, Appellant then thoroughly addressed both admissibility and prejudice.

At oral argument, appellate defense counsel advocated a very restrictive position on what this Court could review. Citing "the law of the case doctrine," appellate defense counsel argued that the only issue before this Court is whether the erroneous admission of the evidence was prejudicial. Recording of Oral Arg. at 12:06–12:11. Appellate defense counsel explained that a lower court's ruling on an issue becomes the law of the case if the opposing party does not raise it in a cross-appeal. *Id.* at 11:39–11:47. Under this view, the issue of admissibility is off the table because the Government did not

---

[2] The assigned issue on which this Court granted review is: "[Military Rule of Evidence] 404(b) protects the accused's right to a fair trial by excluding prejudicial propensity evidence. The military judge erroneously admitted propensity evidence and instructed the members to consider evidence for an improper purpose. Did this error prejudice appellant?" *United States v. Steen*, 80 M.J. 182 (C.A.A.F. 2020) (order granting review).

cross-appeal by certifying the question of admissibility to this Court.

## II. The Cross-Appeal Doctrine

I disagree with Appellant's position that this Court may consider only the issue of prejudice and may not consider the Government's argument that the evidence was properly admitted. In my view, this Court has discretion to consider the issue of the admissibility of the evidence even though the Government did not certify that issue. This conclusion follows from what a leading treatise calls the "cross-appeal doctrine." 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3904 (2d ed. 1992 & Supp. 2021). According to the treatise, the "classic statement of the basic cross-appeal doctrine is provided by the opinion of Justice Brandeis in *United States v. American Railway Express Company*." *Id.* § 3904, at 196 (2d ed. 1992). Justice Brandeis wrote:

> It is true that a party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. *But it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.*

*United States v. Am. Ry. Exp. Co.*, 265 U.S. 425, 435 (1924) (emphasis added).

The Supreme Court routinely follows the final principle explained in the quotation above, stating succinctly that "the prevailing party may defend a judgment on any ground which the law and the record permit that would not expand the relief it has been granted." *United States v. New York Tel. Co.*, 434 U.S. 159, 166 n.8 (1977) (citations omitted); *see also Upper Skagit Indian Tribe v. Lundgren*, 138 S. Ct. 1649, 1654

(2018) (applying the same principle); *Murr v. Wisconsin*, 137 S. Ct. 1933, 1949 (2017) (same); *Greenlaw v. United States*, 554 U.S. 237, 250 n.5 (2008) (same); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (same); *Schweiker v. Hogan*, 457 U.S. 569, 584–85 & n.24 (1982) (same). The Supreme Court has further clarified that an appellee or respondent may defend a decision below on any ground "whether or not that ground was relied upon, rejected, or even considered by [the lower courts]." *Washington v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463, 476 n.20 (1979) (citations omitted).

The cross-appeal doctrine does not make consideration of the prevailing party's arguments mandatory when the prevailing party does not file a cross-appeal and the issue was neither argued before nor addressed by the lower courts. For example, in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 39–40 (1989), the Court declined to consider an argument that the respondent had not pressed before the lower courts, that the lower courts had not addressed, and that possibly would have enlarged the respondent's rights beyond what the lower court decided. The Court reasoned that, "[a]lthough we could consider grounds supporting [the] judgment different from those on which the Court of Appeals rested its decision, where the ground presented here has not been raised below we exercise this authority only in exceptional cases." *Id.* at 39 (quoting *Heckler v. Campbell*, 461 U.S. 458, 468–69 n.12 (1983)) (internal quotation marks omitted).

This Court has applied the cross-appeal doctrine in previous cases. For example, in *United States v. Williams*, 41 M.J. 134, 135 (C.M.A. 1994), a case very similar to the present case, a Court of Military Review (CMR) held that an expert opinion was inadmissible but concluded that the error had not caused prejudice. The appellant appealed to this Court, challenging the CMR's ruling on prejudice. *Id.* This Court affirmed, agreeing with the lower court's no-prejudice analysis but concluding that the expert opinion was admissible. *Id.* Applying the cross-appeal doctrine and citing the Supreme Court's decision in *Christianson*, the Court stated: "Although the Judge Advocate General has not certified for this Court's review the holding of the Court of Military Review that [the] . . . expert opinion testimony . . . was inadmissible, . . . this

4

Court may rule on this issue." *Id.* at 134 n.2 (citations omitted). More recent decisions following the cross-appeal doctrine include *United States v. Perkins*, 78 M.J. 381, 386 n.8 (C.A.A.F. 2019) (affirming the "familiar principle of appellate practice . . . that '[a]n appellee or respondent may defend the judgment below on a ground not earlier aired' ") (quoting *Greenlaw*, 554 U.S. at 250 n.5), and *United States v. Bess*, 80 M.J. 1, 11–12 (C.A.A.F. 2020) (approving a CCA's decision to uphold the decision of a military judge on a ground on which the military judge had not relied).

Applying the cross-appeal doctrine to the present case, the Government may defend the CGCCA's judgment affirming the findings and sentence, both on the ground that the evidence was admissible and on the ground that any error in admission of the evidence did not prejudice Appellant. Although this Court has discretion under the cross-appeal doctrine not to consider the Government's arguments, this case presents no basis for exercising such discretion. Unlike in *Granfinanciera*, the CGCCA ruled on the issue of admissibility, both parties thoroughly addressed the issue in their briefs before this Court, and the Government is not asking for anything more than an affirmance of the judgment below. Accordingly, the issue of admissibility is before the Court and the Court may decide it.[3]

---

[3] The issue on which this Court granted review is whether the erroneous admission of the M.R.E. 404(b) evidence prejudiced Appellant. It is true that this Court often declines to address an argument that is outside the scope of the granted issue. *See, e.g.*, *United States v. Guardado*, 77 M.J. 90, 95 n.1 (C.A.A.F. 2017); *United States v. Phillips*, 64 M.J. 410, 414 n.* (C.A.A.F. 2007). But the Court usually exercises this discretion when the *appellant* makes an argument that is beyond the scope of the granted issue, and to such cases the cross-appeal doctrine is inapplicable. In such cases, the party that must appeal from an adverse judgment either chooses not to present the relevant issue, or does so, and this Court expressly declines to grant it. But in cases such as this one, the cross-appeal doctrine allows the prevailing party to defend the lower court's judgment on a different ground than it pressed before it. Put another way, the losing party cannot foreclose consideration of an alternative ground of affirmance merely by cleverly crafting the issue for which it seeks review. Thus, the Court acts properly in addressing the merits of the admissibility issue.

### III. The Law of the Case Doctrine

Despite the clear import of the cross-appeal doctrine to this case, I cannot fault Appellant for making a contrary argument given wayward precedents of this Court concerning the "law of the case doctrine." According to the Supreme Court, the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983) (citation omitted). This statement embraces two principles. Bryan A. Garner et al., *The Law of Judicial Precedent* 442 (2016). First, under the law of the case doctrine, "[o]nce an appellate court decides an issue, then it is settled in further proceedings in the trial court and controls the case." *Id.* (citing *United States v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004), as an example). Second, the law of the case doctrine "generally binds a court to its own earlier rulings in the same case—in the absence of an intervening ruling by a higher court on the same issue." *Id.* (citing *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002), as an example).

Some of this Court's precedents, however, mistakenly go further than these two principles and incorrectly hold that this Court also must follow a decision of a Court of Criminal Appeals (CCA) on any issue unless the issue is specifically appealed or except in extraordinary circumstances. For example, in *United States v. Doss*, this Court stated:

> [I]n *United States v. Williams*, 41 M.J. 134, 135 n.2 (C.M.A. 1994), this Court recognized that the law-of-the-case doctrine does not preclude this Court from examining the legal ruling of a subordinate court in a case where the Judge Advocate General has not certified the issue. However, we are reluctant to exercise this power and, as a rule, reserve it for those cases where the lower court's decision is "clearly erroneous and would work a manifest injustice" if the parties were bound by it.

57 M.J. 182, 185 n.* (C.A.A.F. 2002) (quoting *Christianson*, 486 U.S. at 817).

Decisions like *Doss* erroneously extend the law of the case doctrine by giving lower courts (i.e., the CCAs) the power to bind their superior court (i.e., this Court). These precedents

are incorrect because they depart from the fundamental rule that "a higher appellate court isn't bound by a lower court's ruling in the same case." Garner *et al.*, *supra*, at 444. Indeed, the Supreme Court rejected *Doss*'s mistaken view of the law of the case doctrine long ago in *Messenger v. Anderson*, 225 U.S. 436 (1912). Writing for the Court, Justice Holmes explained that "the phrase, 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Id.* at 444. The law of the case doctrine, however, does not require a superior court to follow the decision of a lower court that the superior court reviews. Thus, in the words of Justice Holmes, "[o]f course this court, at least, is free when the case comes here." *Id.*

A reexamination of *Doss* reveals the source of the error. In the quotation above, the Court in *Doss* relied on a portion of the Supreme Court's decision in *Christianson* that was not on point. The Supreme Court stated:

> A court has the power to revisit prior decisions *of its own* or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

*Christianson*, 486 U.S. at 817 (quoting *Arizona*, 460 U.S. at 618 n.8) (emphasis added). In this passage, the Supreme Court was addressing the duty of a court to follow "prior decisions of its own," not a duty to follow prior decisions of a lower court. Indeed, the Supreme Court in *Christianson* elsewhere plainly said: "Most importantly, law of the case cannot bind this Court in reviewing decisions below. A petition for writ of certiorari can expose the entire case for review." *Id.* In this case, because the lower court's decision on the admissibility issue is not a "prior decision[] of [this Court]," and because the Government pressed the same argument at every stage, including before this Court, the lower court's decision "cannot bind this Court" and Appellant's petition for review "expose[d] the entire case for review." *Id.*

How should this Court address its mistaken decisions on the law of the case doctrine? There is only one answer: we

cannot follow our precedents when they are inconsistent with Supreme Court decisions. *Doss* is inconsistent with the law of the case doctrine as developed by the Supreme Court because it may require a superior court to follow a decision of a lower court. *Doss* is also inconsistent with the cross-appeal doctrine as developed by the Supreme Court because it conflicts with the principle that the prevailing party may ask an appellate court to affirm the judgment of a lower court on any ground. For these reasons, this Court should not follow *Doss* and similar decisions here or in any other case.

Finally, I note that realigning the cross-appeal doctrine and the law of the case doctrine is highly important. Requiring a prevailing party to cross-appeal and making the parties write another set of briefs—thus forcing this Court to study and digest another set of briefs—will usually be pointless because, as this case shows, additional briefs are not needed. If the appellee asserts a ground for affirmance not covered in the appellant's opening brief, the appellant can respond in the reply brief. Put simply: "It makes no sense to expect a party that prevails in a lower court to appeal the judgment of that court. Such a requirement would waste valuable attorney and judicial resources." *United States v. Savala*, 70 M.J. 70, 79 (C.A.A.F. 2011) (Stucky, J., dissenting).

### IV. Conclusion

I would affirm the judgment of the CGCCA for the reasons presented by Judge Sparks. I respectfully dissent from the Court's contrary view.